No. 99-388

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 282

STATE OF MONTANA,

Plaintiff/ Respondent,

v.

ARCHIE GALEN BRADY,

Defendant/ Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William Boggs, Missoula, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Jim Wheelis, Assistant Montana Attorney General; Fred Van Valkenburg, Missoula County Attorney, Kirsten LaCroix, Deputy Missoula County Attorney

Submitted on Briefs: June 22, 2000
Decided: November 14, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 On February 10, 1999, in the Fourth Judicial District Court, Missoula County, a jury found Archie Galen Brady (Brady) guilty of driving while under the influence. We affirm.

¶2 Brady raises the following issues:

> 1. Did the District Court abuse its discretion when it denied Brady's motion for a mistrial?

> 2. Did the District Court abuse its discretion when it did not dismiss the case on its own motion for insufficiency of the evidence?

## FACTUAL BACKGROUND

¶3 On October 15, 1998, Brady was charged by information with operating a motor vehicle while under the influence of alcohol or drugs, a fourth or subsequent offense, in violation of §§ 61-8-401, 714, MCA. The case arose from the circumstances surrounding a wreck in which Brady, driving alone between Seeley Lake and Missoula, swerved off Montana Highway 200, struck a rock wall, and rolled over. The information also charged Brady with three misdemeanors: driving while license suspended or revoked, in violation of § 61-5-212, MCA; failure to provide proof of insurance, in violation of § 61-6-302, MCA; and failure to give notice of an accident by the quickest means, in violation of § 61-7-108, MCA.

¶4 On February 9, 1999, shortly before voir dire, Brady's trial counsel stated that Brady would plead guilty to the three misdemeanors. He moved the District Court to "instruct the State to instruct their witnesses not to mention any of those offenses for which he was charged and which he will plead guilty to." Brady's counsel also said, "I don't object to the fact of them mentioning that he left his wallet at the scene or that his driver's license was

left, but I believe it would be unduly prejudicial for the jury to learn that it was suspended." He only objected to references to the effect that Brady was driving while his license was suspended or without insurance. The State did not object to this motion.

¶5 During trial, the State's third witness, Chris Schultz, a Missoula County Sheriff's Deputy, testified on direct examination that at the scene of the wreck, "about four or five feet from the driver's door, there was a wallet laying on the ground. And I picked that wallet up, went through it, and found an expired driver's license to--." At this point, Brady objected and the District Court sustained the objection. Shortly thereafter, the judge, counsels, and Brady met in chambers. Brady's counsel moved for a mistrial, arguing that the judge had ordered the State not to mention an expired license. The State countered that the stipulation was that the State would not mention that his license was suspended, but that its expired status was not covered. The State argued that the remark was inadvertent and the license was part of the transaction. The State affirmed that they had instructed the three officers who would testify not to mention the suspension of Brady's driver's license. The District Court agreed with the State.

¶6 The District Court found that there was a difference between the jury knowing that Brady's license had expired and hearing that it was suspended, which would suggest prior criminal behavior. The District Court said, "[a]nd I think that's what's prejudicial to your client-is prior criminal behavior suggested by a suspended license." The District Court gave the following admonition to the jury:

> Ladies and gentlemen of the jury, the officer just mentioned that the Defendant had an expired license. I would request that you please disregard this testimony. This fact has nothing to do with the case. An expired license is no indication of guilt of any offense by the Defendant.

The State did not again mention the license except to note that the information in Brady's wallet, coupled with the vehicle registration, allowed the officers to track down Brady at his home.

¶7 The State also called several other witnesses. The State called a truck driver who had witnessed Brady speeding and exhibiting poor control over his vehicle shortly before the crash. The State called Brady's sister. She testified that she only saw Brady drink one beer after the wreck. The State called two officers, including Officer Schultz, who testified about the scene of the wreck and Brady's condition at his home. They concluded that the

wreck was not caused by a tire coming off and that Brady was very intoxicated. They also testified about Brady attempting to lie about being involved in the wreck. The State's final witness was an officer who did not see the scene of the wreck, but testified as to Brady's intoxication. He testified that although Brady was injured, his drunken state was not from a head trauma.

¶8 After the State closed its case in chief, Brady moved for a directed verdict of acquittal. The District Court denied Brady's motion. Brady called his sister as his first witness. Brady also called two witnesses in an attempt to establish that a malfunctioning tire caused the wreck. Brady then rested, and the State recalled one of the officers to rebut that a tire caused the wreck. At the close of evidence, Brady did not renew his motion for dismissal or for a directed verdict.

¶9 The jury found Brady guilty of driving while under the influence. On March 22, 1999, Brady was sentenced to thirteen months at the Montana State Prison, followed by a four-year suspended sentence. He now appeals to this Court.

## DISCUSSION

¶10 Brady first argues that the denial of his motion for a mistrial was reversible error because the State's witness deliberately violated an order in limine, to which the State had previously stipulated, and because the evidence against him was far from overwhelming. Second, Brady argues that the District Court should have taken the case from the jury at the close of all the evidence, since the totality of the evidence, viewed in the light most favorable to the prosecution, established reasonable doubt of guilt as a matter of law.

¶11 The State concedes that after the State and Brady stipulated that the evidence of Brady's driving while his license was suspended and driving without insurance would not be brought before the jury, an officer testified that he found Brady's wallet near the wrecked car. The wallet contained Brady's expired driver's license. The State argues, however, that reading the record strictly, the expired status of the license was not excluded by the stipulation. Further, the prosecution said that its mention was inadvertent, and there is nothing on the record to refute that assertion.

¶12 The State also points out that the District Court sustained an objection to the testimony that Brady's license was expired and gave a corrective admonition to the jury. According to the State, even if the evidence was presented contrary to the stipulation, it

could not have contributed to Brady's conviction because having an expired license is not commonly thought of as a serious or even a criminal matter, and there was ample evidence to convict Brady. Lastly, the State argues that the District Court did not abuse its discretion by denying Brady's motions for a mistrial and acquittal at the close of the State's case, or when it did not dismiss the case on its own motion as permitted by § 46-16-403, MCA.

## ISSUE 1

¶13 **Did the District Court abuse its discretion when it denied Brady's motion for a mistrial?**

¶14 We review a denial of a motion for a mistrial for an abuse of discretion. A mistrial is appropriate when a reasonable possibility exists that inadmissible evidence might have contributed to the conviction. State v. Partin (1997), 287 Mont. 12, 18, 951 P.2d 1002, 1005 (officer's improper reference in forgery prosecution to sample of a defendant's handwriting from a prior arrest denied defendant a fair and impartial trial). The strength of the evidence against the defendant together with the prejudicial influence of the inadmissible evidence and whether a cautionary, jury instruction could cure any prejudice must be considered in determining whether a prohibited statement contributed to the conviction. *Partin*, 287 Mont. at 18, 951 P.2d at 1005. A mistrial should be denied, however, for technical errors or defects that do not affect the substantial rights of the defendant and the record is sufficient to establish the defendant's guilt. State v. Berosik, 1999 MT 238, ¶ 20, 296 Mont. 165, ¶ 20, 988 P.2d 775, ¶ 20. "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Section 46-20-701(2), MCA.

¶15 Brady argues that not only was it inherently prejudicial for the State's witness to mention that Brady's driver's license was expired, but the officer deliberately violated the stipulation excluding evidence of Brady driving with a suspended license and without insurance. We disagree.

¶16 Brady's motion in limine did not apply to the officer's testimony that Brady's license was expired. Brady only objected to references to the effect that he was driving while his license was suspended or without insurance. As the District Court noted, there is a difference between an expired license and a suspended license. A driver's license is suspended because its bearer did something wrong, but anyone can allow a license to

expire. Having an expired license is not in itself criminal. It is a common mistake that does not imply bad character.

¶17 This is distinct from the *Partin* case. In *Partin*, it was undisputed that the officer's testimony violated the district court's order in limine and was inadmissible. *Partin*, 287 Mont. at 18, 951 P.2d at 1005. Here, the State's witness did not directly violate the stipulation in limine. Testimony that Brady's license had expired was admissible. Therefore, we need not determine whether a reasonable possibility exists that it contributed to Brady's conviction.

¶18 Further, the District Court admonished the jury to disregard the testimony and that "[a] n expired license is no indication of guilt of any offense by the Defendant." Any potential prejudice that might have resulted from the testimony of Brady's license being expired was sufficiently cured by the District Court's admonition to the jury. "[A]n error in the admission of evidence may be cured if the jury is admonished to disregard it." State v. Ford (1996), 278 Mont. 353, 361, 926 P.2d 245, 249 (citing State v. Conrad (1990), 241 Mont. 1, 9, 785 P.2d 185, 190)(prejudicial effect of testimony about a defendant's prior crimes was cured by cautionary instruction). The District Court did not abuse its discretion by denying Brady's motion for a mistrial.

## ISSUE 2

¶19 **Did the District Court abuse its discretion when it did not dismiss the case on its own motion for insufficiency of the evidence?**

¶20 We review a district court's decision to deny a criminal defendant's motion for a directed verdict for an abuse of discretion. A defendant is entitled to a directed verdict of acquittal if reasonable persons could not conclude from the evidence, taken in a light most favorable to the prosecution, that guilt was proven beyond a reasonable doubt. State v. Bromgard (1993), 261 Mont. 291, 293, 862 P.2d 1140, 1141.

¶21 Brady argues that, taken as a whole, the evidence was insufficient to submit to the jury because there was no direct or even circumstantial evidence that he had anything at all to drink, much less was intoxicated, at the time he was driving and was involved in an accident. We disagree.

¶22 Immediately before the wreck, a truck driver witnessed Brady driving dangerously,

speeding and exhibiting poor control of his vehicle. Brady apparently just swerved off the road and into a rock wall. He did not use his brakes before hitting the wall. Brady then fled the scene of the accident without reporting it to the police. A bottle of rum, found in Brady's wrecked car, established alcohol was available to him before the crash.

¶23 Brady produced evidence of only one beer consumed after the wreck. His behavior, physical appearance and the results of the horizontal gaze nystagmus test showed that he was quite intoxicated when the officers arrived at his home. One beer would not explain the slurred speech, red eyes, and staggering that the officers observed. Although Brady was injured and no doubt shaken by his accident, it does not follow that the evidence failed to show he was intoxicated when the wreck occurred.

¶24 One of the investigating officers who was trained to look for physical injuries or symptoms that could have accounted for Brady's behavior other than intoxication concluded that Brady was not suffering from a head injury or some other injury that would mimic intoxication. Rather, it was the officer's expert opinion that Brady was intoxicated.

¶25 Brady's conduct at his home was further incriminating. He first tried to lead the police to believe that he had not been in the wreck acting as though he had no knowledge of the wreck. Then Brady told the police that his facial injuries were from his sister punching him. Then he changed his story to some unknown person struck him at a bar the night before, but he did not know where the bar was. Brady also refused to perform any field sobriety maneuvers. A reasonable juror could easily conclude that Brady was trying to hide illegal behavior.

¶26 Brady called two witnesses in an attempt to establish that a tire malfunction could have caused the accident. An officer, however, testified that Brady's vehicle left yaw marks from all four tires. A yaw mark is laid down from the edges of tires when a vehicle is in a side skid. If a tire was loosening or actually came off, as Brady claims, the yaw marks would not have been straight or laid down evenly. There would not have been four tire marks across the roadway and there would have been other kinds of marks from a dragging hub or axle if a tire had come off. The physical evidence at the accident scene does not support Brady's claim that a tire malfunction caused the wreck.

¶27 Brady argues that witnesses at the scene would have told the police whether he was intoxicated. The record is silent as to the identity of any such purported witnesses. From the record one cannot tell what they might have testified to or whether they were even

available for Brady's trial.

¶28 The jury apparently did not believe the wreck happened because Brady's car malfunctioned, and it did not believe that his injuries accounted for his drunken behavior or that his apparent intoxication when the officers saw him was the consequence of the beer he drank after the accident. We have long held that when circumstantial evidence is susceptible to differing interpretations, it is within the providence of the jury to determine which will prevail. *See, e.g.,* State v. Brodniak (1986), 221 Mont. 212, 222, 718 P.2d 322, 329; State v. Flack (1993), 260 Mont. 181, 189, 860 P.2d 89, 94; State v. Hall, 1999 MT 297, ¶ 22, 297 Mont. 111, ¶ 22, 991 P.2d 929, ¶ 22. Further, the State is not obligated to supply any specific type of evidence: a jury may consider the facts and circumstances of an accident and the observations and opinions of witnesses, giving effect to the evidence it finds credible. State v. Peterson (1989), 236 Mont. 247, 250, 769 P.2d 1221, 1223; State v. Longacre (1975), 168 Mont. 311, 313, 542 P.2d 1221, 1222. We hold that when the evidence is taken in a light most favorable to the State a reasonable juror could have found Brady guilty beyond a reasonable doubt. The District Court did not abuse its discretion by allowing the evidence to go to the jury.

1. ¶The District Court is affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER