No. 04-066

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 130

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

PATRICIA JOSEPHINE LONG,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and for the County of Fergus, Cause No. DC 02-37,
The Honorable Randal I. Spaulding, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Jon A. Oldenburg, Attorney at Law, Lewistown, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Robert Stutz,
Assistant Attorney General, Helena, Montana

            Thomas Meissner, Fergus County Attorney; Monte J. Boettger, Deputy
County Attorney, Lewistown, Montana

Submitted on Briefs:  October 6, 2004

Decided:  May 26, 2005

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Patricia Long (Long) was charged by amended information with three counts of felony criminal distribution of dangerous drugs and one count of misdemeanor criminal possession of drug paraphernalia. A Fergus County jury found Long guilty of two felony counts of criminal distribution of dangerous drugs and not guilty of the remaining charges. Long appeals.

¶2 We restate the issues as follows:

¶3 1. Did the District Court err in denying Long's motion for a mistrial because during a second re-direct examination of a witness, a prejudicial statement concerning prior offenses was made before the jury?

¶4 2. Did the District Court err in allowing "bindles"[1] that had not been tested to determine if they contained dangerous drugs to be taken into the jury room during deliberations?

¶5 We affirm.

## PROCEDURAL BACKGROUND

¶6 In May 2002 Rebecca Erickson (Erickson) approached law enforcement with information about the distribution of dangerous drugs in Fergus County. This information instigated an investigation into Long's activities. In June 2002 Erickson contacted the

---

[1] A "bindle" is a piece of paper or similar material onto which a powdered substance is placed and the material folded so that it encloses the substance.

investigating officer; this time informing him that Long had "fronted"[2] one bindle of methamphetamine to her. The officer went to Erickson's residence to retrieve the bindle on June 14, 2002, and also scheduled a controlled purchase for the next day. According to the officer, the bindle retrieved from Erickson on June 14, 2002, contained a "white powdery substance in it which field tested positive for methamphetamine." This bindle was later submitted to the Montana State Crime Lab and it was confirmed that the bindle contained methamphetamine.

¶7    On June 15, 2002, two law enforcement officers met with Erickson. One officer searched Erickson's vehicle while the other searched her person and fitted Erickson with a monitoring device. They gave Erickson $110 to pay for the fronted bindle of drugs and instructed Erickson to purchase additional drugs if possible. Erickson then drove, monitored by law enforcement in a separate vehicle, to Long's residence. Erickson approached Long's residence and engaged in conversation with Long. The officers, who monitored the conversation via the wire worn by Erickson, could identify the voices as Erickson's and Long's. Following Erickson's interaction with Long, Erickson turned over three bindles of alleged dangerous drugs to the officers. According to Erickson the entire $110 was given to Long. Law enforcement submitted the three bindles to the Montana State Crime Lab for testing. Pursuant to office policy the crime lab only tested one of the three bindles; that bindle was found to contain methamphetamine.

¶8    On June 20, 2002, Erickson, again monitored by law enforcement, attempted to make

---

[2]In this context fronting means that the item is given now and payment is expected later.

3

another purchase. Law enforcement provided Erickson with $70 and following Erickson's interaction with Long, Erickson turned $40 and one bindle over to law enforcement. Law enforcement submitted the bindle to the Montana State Crime Lab for testing and the lab confirmed that the bindle contained methamphetamine.

¶9 A search warrant was obtained for Long's home. On June 21, 2002, law enforcement executed the search warrant and seized further evidence.

¶10 Long was charged by amended information with three counts of felony criminal distribution of dangerous drugs and one count of misdemeanor criminal possession of drug paraphernalia. A jury found Long guilty of two counts of criminal distribution of dangerous drugs, and not guilty of the third count of criminal distribution of dangerous drugs. She was also found not guilty of misdemeanor possession of drug paraphernalia.

¶11 Additional facts are set forth in the discussion of the issues.

**STANDARD OF REVIEW**

¶12 A district court has wide discretion in determining the scope and extent of reexamination regarding matters brought out on cross-examination. *State v. Veis,* 1998 MT 162, ¶ 19, 289 Mont. 450, ¶ 19, 962 P.2d 1153, ¶ 19. We review the District Court's action in allowing the prosecution to re-examine its witness following its previous direct, defense's cross, the State's re-direct and the defense's re-cross for abuse of discretion. *See State v. Shaw* (1992), 255 Mont. 298, 302-03, 843 P.2d 316, 319.

¶13 A motion for a mistrial will be granted when there is either a demonstration of manifest necessity, or where the defendant has been denied a fair and impartial trial. *State v. Ford* (1996), 278 Mont. 353, 359-60, 926 P.2d 245, 249. We review the denial of a

motion for a mistrial for abuse of discretion. *State v. Scheffelman* (1987), 225 Mont. 408, 411, 733 P.2d 348, 350.

¶14     Once properly admitted, whether particular items of physical evidence, not proscribed by statute, may be taken into the jury room during deliberations is within the sound discretion of the District Court. *See State v. Christenson* (1991), 250 Mont. 351, 361, 820 P.2d 1303, 1309.

## DISCUSSION

### ISSUE 1

¶15     **Did the District Court err in denying Long's motion for a mistrial because during a second re-direct examination of a witness, a prejudicial statement concerning prior offenses was made before the jury?**

¶16     As the last witness during the State's case in chief, informant Erickson was examined by the prosecution and cross-examined by counsel for Long. Re-examination and re-cross examination were also conducted. On the conclusion of the re-cross examination the prosecutor moved the District Court for permission to again re-open the direct examination of Erickson for the stated purpose of asking questions on a subject defense counsel brought up. After inquiry by the District Court concerning why this was necessary, counsel and the District Court had a conversation off of the record at the bench. Thereafter, defense counsel objected to the further questioning. The objection was overruled and the District Court allowed the State to re-open its direct examination and granted the defense a continuing objection to further questions asked of the witness.

¶17     During the continued questioning of the witness Erickson, the following exchange

5

took place:

> [By Ms. Perry, (for the prosecution)]
> Q   And on any occasion did you ever discuss drugs with the Defendant before May 23rd?
>
> A   Yes.
>
> Q   And could you tell us just the substance of those conversations?
>
> Mr. Oldenburg [defense counsel]: Your Honor, I believe it asks for hearsay, and I object on that basis.
>
> Ms. Perry: Your Honor, it will be the statements of the Defendant. I believe that's an exception.
>
> The Court: Can you tell us the gist of the discussions without reiterating what the Defendant said?
>
> Witness Erickson: I don't really know how to say that without referring to my written statement. I don't really know how to put that without saying - - I can say it in two sentences, but I don't know how to word it exactly.
>
> The Court: Make a stab at it. I will let you know, somebody will let you know . . . . . . . . . .
>
> Witness Erickson: All right. Just that with -- by law enforcement picking on her she doesn't sell to children and just basically that's --
>
> Mr. Oldenburg: Objection, Your Honor. Your Honor, I would like to make a motion outside the presence of the jury.

¶18   The District Court took a recess. Defendant made a motion for a mistrial arguing that it was procedurally improper for the District Court to allow the State to re-open direct examination of Erickson after it had already examined her on direct and re-direct, and that allowing such examination resulted in an improper, unnoticed statement of prior bad acts. The State argues that the District Court acted within its discretion when allowing the State to reopen its re-direct, that it did not intend to elicit the improper testimony and that any error

6

could be cured by the court's cautionary instruction to the jury.

¶19 The District Court had the reporter read back the witness's statement, and listened to the tape recording of the statement. The District Court found as a matter of fact that there was no prejudice to the Defendant that could not be cured by a cautionary instruction. The District Court also found that it was not the intention of either counsel or the District Court to elicit the statement that was made. Defendant's motion for a mistrial was denied. Defense counsel was given the option of asking further questions of the witness, but declined to do so. The trial was reconvened and the jury was instructed that they were to disregard the statement set forth above. The State then rested. Defendant presented no witnesses, but based her defense on the lack of credibility of the State's witnesses, including Erickson, and entrapment. The jury then retired to deliberate, and returned verdicts of guilty on two counts of criminal possession of dangerous drugs.

¶20 Montana Rule of Evidence 611(d) provides:

> Re-examination and recall. A witness may be re-examined as to the same matters to which the witness testified only in the discretion of the court, but without exception the witness may be re-examined as to any new matter brought out during cross-examination. After the examination of the witness has been concluded by all the parties to the action, that witness may be recalled only in the discretion of the court.

¶21 Beyond the bare assertion that the District Court abused its discretion, Long failed to cite any authority supporting her assertion that it was an abuse of discretion to allow the prosecutor to ask further questions of the witness. Under these facts, allowing the State to reopen its re-direct examination was within the discretion of the District Court, and no abuse of that discretion is shown.

7

¶22 Long next argues that the District Court erred in not granting her motion for a mistrial based on witness Erickson's statement she "doesn't sell to children." Long argues this comment constitutes evidence of prior crimes, and was improper as no notice was given as required by § 46-13-109, MCA; *State v. Just* (1979), 184 Mont. 262, 273-74, 602 P.2d 957, 963-64 modified by *State v. Matt* (1991), 249 Mont. 136, 142, 814 P.2d 52, 56.

¶23 The modified *Just* rule allows admission of evidence of other crimes, wrongs, or acts under Rule 404(b), M.R.Evid., only upon the observation of certain procedural protections. One such procedural protection is a notice requirement whereby the prosecution must notify the defense of its intent to use such evidence. *Matt,* 249 Mont. at 142-43, 814 P.2d at 56. Long claims that no notice was provided here and therefore she is entitled to a mistrial based upon the witness's statement. The State argues that the comments were unsolicited and unintended thus it could not provide the notice required.

¶24 A mistrial is appropriate when a reasonable possibility exists that inadmissable evidence may have contributed to the conviction. *State v. Brady*, 2000 MT 282, ¶ 14, 302 Mont. 174, ¶ 14, 13 P.3d 941, ¶ 14.

> The strength of the evidence against the defendant together with the prejudicial influence of the inadmissible evidence and whether a cautionary, jury instruction could cure any prejudice must be considered in determining whether a prohibited statement contributed to the conviction. A mistrial should be denied, however, for technical errors or defects that do not affect the substantial rights of the defendant and the record is sufficient to establish the defendant's guilt. [Internal citations omitted].

*State v. Brady,* ¶ 14.

¶25 The facts here are analogous to those before this Court in *State v. Brush* (1987)*,* 228 Mont. 247, 741 P.2d 1333. In *Brush,* the defendant was charged with multiple counts of

8

sexual assault. The counts were severed for trial. At the trial, on count one an officer testified as to his investigation into the charges and specifically his conversations with an alleged victim of the severed count two. The officer responded by asserting that one of the children had indicated that the defendant had tried to touch "both of them" in their private parts. The defense objected, the objection was sustained, and the court directed the jury to disregard any testimony concerning any other alleged offense. At the close of the State's case the defense moved for a mistrial arguing that these comments were evidence of prior crimes and violated the modified *Just* rule because the county attorney failed to give notice. The trial court denied this motion finding that the officer's testimony had not been purposely drawn out by the county attorney. *Brush,* 228 Mont. at 249-51, 741 P.2d at 1334-36. On appeal we affirmed stating:

> We fail to see how *Just* applies to a case where the county attorney never intended to introduce evidence of defendant's other crimes and where the testimony was an unintentional response to a non-suggestive question as occurred here. Therefore, we conclude that no *Just* notice was required under these circumstances.

*Brush*, 228 Mont. at 250, 741 P.2d at 1335. We also noted that the general rule is that where the trial judge withdraws or strikes improper testimony from the record with an accompanying cautionary instruction to the jury, any error committed by its introduction is presumed cured. *Brush,* 228 Mont. at 251, 741 P.2d at 1335; *State v. Smith* (1986), 220 Mont. 364, 375-76, 715 P.2d 1301, 1308; *State v. Freeman* (1979), 183 Mont. 334, 345, 599 P.2d 368, 374. Further, as we discussed in *Freeman,* the jury cannot be presumed to ignore their duties to respect the instructions of the court and to decide a case based only upon the evidence admitted. *Freeman*, 183 Mont. at 345-46, 599 P.2d at 374-75.

9

¶26 Like the District Court in *Brush*, the District Court here found that it was not the intent of counsel nor of the court to elicit the statement complained of. Further, as in *Brush*, procedural protections were followed to safeguard defendant's right to a fair trial: the defense objected and moved to make a motion outside the presence of the jury, the court entertained the defense's motion and denied it finding that a curative instruction would suffice to cure any prejudice, and the court so instructed the jury to disregard the last statement made by the witness.

¶27 Because the trial court is in the best position to observe the jurors and determine the effect of questionable testimony, it is given a latitude of discretion in its rulings on prejudicial evidence. *Brush,* 228 Mont. at 252-53, 741 P.2d at 1336. Any prejudicial effect the statement may have had was promptly cured by the court's cautionary instructions to the jury. *See Brush,* 228 Mont. at 253, 741 P.2d at 1336. We conclude, based on the record of this case, that the trial judge did not abuse his discretion in denying the Defendant's motion for a mistrial.

**ISSUE 2**

¶28 **Did the District Court err in allowing "bindles" that had not been tested to determine if they contained dangerous drugs to be taken into the jury room during deliberations?**

¶29     Long was tried on three counts of felony criminal distribution of dangerous drugs and one count of misdemeanor criminal possession of drug paraphernalia. State's Exhibit 1 contained three bindles, the contents of one bindle had been tested by the State Crime Lab and was found to contain methamphetamine, and no testing had been done on the contents of the other two. The entire exhibit was admitted into evidence, and was viewed by the jury during the trial. At the conclusion of the evidence, Long objected[3] to Exhibit 1 going into the jury room, and especially objected to allowing the two untested bindles into the jury room during deliberations. The reason given by defense counsel for the objection was that the jury could experiment with the exhibit, and speculate whether the untested bindles contained methamphetamine, and thus they should not have it available.

¶30     The District Judge asked counsel for both parties if they were aware of any precedent which would prohibit the Exhibit from being in the jury room during deliberations, and none was forthcoming. The judge overruled the objection and allowed the exhibit to be delivered to the jury. The Court also instructed the jury as follows:

> You are instructed that State's Exhibit 1 contains three paper bindles. The contents of only one of the bindles was analyzed or tested by the Montana

---

[3]Long did not object to Exhibits 2 and 3 going to the jury room during deliberations. Exhibit 2 and 3 each contained one bindle. Each Exhibit was tested by the Montana State Crime Lab and was found to contain methamphetamine.

11

State Crime Lab and alleged to contain methamphetamine. You shall not speculate as to the contents of the other two bindles' contents as they were not tested nor analyzed by the Montana State Crime Lab.

¶31 Although we have never squarely addressed the issue of whether exhibits allegedly containing dangerous drugs should be allowed in the jury room, we have noted that permitting the jury to examine physical evidence in conjunction with trial testimony "is not only permissible but enlightened." *State v. Thompson* (1974), 164 Mont. 415, 424, 524 P.2d 1115, 1120.

¶32 Long again argues on appeal that allowing the untested bindles in the jury room could lead to juror experiments and speculation about whether the untested bindles contained dangerous drugs. Long further argues, for the first time on appeal, that because the District Court did not expressly find that the physical evidence of the three bindles was necessary for the jury to deliberate on, it failed to comply with § 46-16-504, MCA, and therefore, the items were improperly allowed in the jury room.

¶33 Conversely, the State argues that the criminal distribution charge was supported by the tested bindles and that any untested bindles, in addition to other physical evidence, supported the paraphernalia charge. Further, the State argued that the District Court's discussion with counsel and ultimate ruling allowing the materials into the jury room complied with § 46-16-504, MCA, and the court's cautionary instruction cured any prejudice to the defendant.

¶34 Section 46-16-504, MCA, provides:

> Upon retiring for deliberation, the jurors may take with them the written jury instructions read by the court, notes of the proceedings taken by themselves, and all exhibits that have been received as evidence in the cause that in the

12

opinion of the court will be necessary.

¶35 Here, even though the District Judge requested authority on the point, § 46-16-504, MCA, was not called to his attention. It would be unfair to the District Court to reverse a discretionary decision on a point of law that was not raised and was argued for the first time on appeal. *See Unified Industries, Inc. v. Easley,* 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15 (stating "[t]he general rule in Montana is that this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory. The basis for the general rule is that it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider").

¶36 Further, Long directs us to no authority in which we have ever required that the District Court make an express finding that a particular exhibit, which has been admitted into evidence, is necessary before allowing that evidence to be in the jury room during its deliberations. We conclude the District Court's careful consideration of this issue and its cautionary instruction complied with the requirements of § 46-16-504, MCA.

¶37 The jury had viewed the entire exhibit during the trial. The jurors were instructed that they were not to speculate that the untested bindles contained dangerous drugs. Long was charged with sale of dangerous drugs, and one of the bindles was proven to contain such. Long did not contest the fact that methamphetamine was in one of the bindles that Erickson delivered to the Sheriff's deputies. Rather, her defenses were an attack on the credibility of the State's witnesses and entrapment. Under these circumstances we fail to see how Long could have been denied a fair trial by allowing the untested bindles to be taken into the jury room during deliberations.

13

¶38     The District Court did not abuse its discretion in allowing the entire State's Exhibit

1 into the jury room during deliberations.

¶39     We affirm.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART

Justice James C. Nelson concurs.

¶40 I concur in our Opinion with one caveat.

¶41 Here, the two untested bindles were largely irrelevant as to the distribution charges. Distributing one bindle accomplished the same result as distributing three. That said, I suggest that it suspends the laws of human nature to expect that jurors, presented with three similar bindles, only one of which was tested, will not speculate that the other two contain dangerous drugs as well--an instruction to the contrary notwithstanding. Any error in admitting the untested bindles here, however, was harmless.

¶42 My concern is that the rationale of this case not be applied in cases where the charges involve a certain quantity or certain quality of a dangerous drug. For example, under § 45-9-102, MCA, possessing more than a certain quantity of marijuana or hashish (§ 45-9-102(2), MCA) can turn a misdemeanor into a felony (§ 45-9-102(5), MCA). In those cases, I would require the State to actually test each unit of drug that will be used to prove the more serious charge. In those cases, use of the untested units of drugs may well prejudicially affect the outcome of the case.

¶43 With that caveat, I concur.

/S/ JAMES C. NELSON

15