DA 06-0458

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 129

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOEL MILES WHITE,
 a/k/a JOEL MILES SEMINOLE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC-05-601
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender; Roberta R. Zenker,
Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Honorable Mike McGrath, Attorney General; Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

            Dennis Paxinos, County Attorney, Billings, Montana

Submitted on Briefs:  February 27, 2008

Decided:  April 22, 2008

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Appellant Joel M. White (White) appeals from the order of the Thirteenth Judicial District Court, Yellowstone County, denying his motion for a mistrial. We affirm.

¶2      We consider the following issue on appeal:

¶3      Did the District Court err by denying White's motion for a mistrial on the basis of a juror's comment, made during deliberations, that a friend had called him about the case?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      On June 25, 2005, White went to see his sister, Diane Temple, at her home in Billings. Diane's husband, Gary Temple, and White did not get along and upon Gary's return to the home, Gary told Diane that he did not want White in his house. Diane and White then left together and went to a friend's apartment, taking Diane and Gary's Dodge Durango. Later that evening, Gary went looking for Diane and, finding the Dodge parked on the street, activated the car alarm. Diane heard the alarm and went outside where she and Gary began to argue. White watched the argument from the porch until he and Gary began to argue, at which point White moved into the front yard. A physical confrontation ensued. During the course of the fight, White pulled out a knife and stabbed Gary seven times before finally stabbing Gary in the neck, severing Gary's jugular vein and cutting his carotid artery. Gary stumbled into the street and died. White and Diane fled the scene. Onlookers dialed 9-1-1 and emergency personnel arrived but Gary could not be helped. White and Diane were apprehended by police a few blocks away and White was arrested.

2

¶5 On June 30, 2005, the county attorney filed an information charging White with deliberate homicide, a felony, in violation of § 45-5-102(a), MCA. The case proceeded to jury trial on March 6, 2006. During the trial, eleven eyewitnesses testified about the fight leading to Gary's death. White testified in his own defense, admitting that he had caused Gary's death but asserting that his actions were justified in self-defense. However, eyewitnesses testified that White initiated the fight and continued the attack even after Gary retreated with both hands in the air. Witnesses testified that White told Gary "you're dead[, y]ou're going to fucking die." On the sixth day of trial, March 13, 2006, the presentation of evidence concluded and the jury was dismissed overnight, with closing arguments and jury instructions scheduled for the next day, to be followed by jury deliberations. Prior to dismissal the judge admonished the jury, saying:

> Once again, please do not discuss the case, or form any opinions about the case, and once again, there will be a newspaper article and some news stories about this. Please do not watch the news stories, go onto the internet, or read the newspaper articles.

¶6 The following day, after closing arguments and jury instructions were given, jury deliberations commenced. Approximately two hours after deliberations had begun, one of the jurors, Robert Lindbergh (Lindbergh), began to tell the jury how a friend of his had called Lindbergh the night before and wanted to know if Lindbergh would vote to convict White. Lindbergh told his friend that he could not discuss the case. However, the friend continued and "gave [Lindbergh] his opinion" that he "read it in the paper . . . [that] the Defendant was in prison and that he got out of prison and that he killed this man . . . ." According to the jury foreman, Dion Campbell (Campbell), the jury's immediate reaction

to Lindbergh's comment was that Campbell and several other jurors said "whoa, whoa, whoa, we can't hear this." The jury then decided to report the incident to the judge and contacted the bailiff.

¶7 Soon after, the court, with counsel and White present, questioned Foreman Campbell and Lindbergh about the incident.[1] Campbell explained to the court that, although all the jurors had heard the comment, they all "agreed right at the front that [they were] not going to consider" it. Campbell explained that deliberations proceeded from there and the comment was not discussed further. Similarly, Lindbergh stated that when he began to tell the jury about the phone call, the other jurors

> cut me off right away. And that's when . . . it dawned on me. . . [that] I shouldn't have said that, I should have kept my mouth shut. But after it happened, you know, and then I apologized to them and then we got to talking about it a little bit in there and they agreed that what I had said has not affected them and what their thinking is.

Following this testimony, White moved for a mistrial on the ground that the jury had been tainted against him. White argued that a "cautionary instruction or any other type of admonition from the court" would not cure the problem, making a mistrial appropriate. The District Court denied the motion, stating that White had not "been denied a fair and impartial trial" because (1) the jury quickly brought the issue to the court's attention, (2) both Campbell and Lindbergh stated that the jury had not discussed the comment further and the jury's discussion prior to and after the comment remained on the same track, and (3) the "overwhelming evidence is that in fact, Mr. White is guilty of deliberate homicide

---

[1]According to Campbell's recitation of the comments, Lindbergh also reported that his friend had said that White had obtained a knife.

and that the defense of justifiable use of force was not proven even close to beyond a reasonable doubt[.]" The court then called the jury into the courtroom and gave the following cautionary instruction:

> Members of the jury, one of the jury instructions that the Court gave was that you could only consider evidence which was received in this Courtroom and evidence which was able to be cross examined. Evidently some evidence has come in from other sources, and I'm going to ask you to completely and totally disregard that evidence. The Defendant has a right to be tried on the charge only based upon the evidence which has been presented in this Courtroom and subject to cross examination. With that very strict admonition, I'm going to ask you to go back into the jury room and continue your deliberations. Thank you.

The jury was then excused to continue deliberations. Deliberations continued for nearly another four hours before the jury returned its verdict, finding White guilty of deliberate homicide. The District Court sentenced White to life imprisonment at the Montana State Prison with a concurrent ten-year term pursuant to § 46-18-221, MCA, for use of a weapon. White appeals.

## STANDARD OF REVIEW

¶8 When deciding whether to grant a motion for a mistrial, the district court must determine whether the defendant was denied a fair and impartial trial. *State v. Dubois*, 2006 MT 89, ¶ 33, 332 Mont. 44, ¶ 33, 134 P.3d 82, ¶ 33. We review a district court's grant or denial of a motion for a mistrial to determine whether the court abused its discretion. *Dubois*, ¶ 33; *State v. Kennedy*, 2004 MT 53, ¶ 14, 320 Mont. 161, ¶ 14, 85 P.3d 1279, ¶ 14. The decision of a district court regarding the impartiality of a jury will not be set aside unless there is a clear abuse of discretion. *Kennedy*, ¶ 14.

5

¶9 The State expresses some uncertainty about the correct standard of review, noting White argues an apparent "alternative to the 'fair and impartial trial' abuse of discretion legal standard" which "holds that a district court properly grants a motion for mistrial when a reasonable possibility exists that inadmissible evidence may have contributed to the conviction." However, this standard is not an alternative appellate standard of review, but rather one of the substantive legal factors by which a district court determines whether a motion for mistrial is meritorious. "A *district court* properly grants a motion for mistrial when a reasonable possibility exists that inadmissible evidence may have contributed to the conviction." *Dubois*, ¶ 33 (citing *State v. Long*, 2005 MT 130, ¶ 24, 327 Mont. 238, ¶ 24, 113 P.3d 290, ¶ 24) (emphasis added). Other like factors, such as the prejudicial effect of the inadmissible evidence, are further discussed herein. After the district court has applied these substantive factors, we review the district court's disposition of the motion on appeal for abuse of discretion.

## DISCUSSION

¶10 **Did the District Court err by denying White's motion for a mistrial on the basis of a juror's comment, made during deliberations, that a friend had called him about the case?**

¶11 White argues that by this incident "the entire jury was exposed to prejudicial information" and the "nondescript cautionary instruction was insufficient to cure the prejudice," thereby denying him a fair and impartial trial. White contends that Lindbergh's comment was so prejudicial that a reasonable possibility exists that the outside information might have contributed to his conviction. The State responds that, while the outside information was indeed inappropriately given by one of the jurors, in

6

the context of the entire case the statement alone did not render White's trial unfair or contribute to his conviction.

¶12    In general, where a reasonable possibility exists that inadmissible evidence may have contributed to the defendant's conviction, a grant of mistrial is proper. *Dubois*, ¶ 33. When determining whether a prohibited statement contributed to the conviction, a district court should consider the "'strength of the evidence against the defendant together with the prejudicial influence of the inadmissible evidence and whether a cautionary, jury instruction could cure any prejudice . . . .'" *Long*, ¶ 24 (quoting *State v. Brady*, 2000 MT 282, ¶ 14, 302 Mont. 174, ¶ 14, 13 P.3d 941, ¶ 14). Denial of a mistrial is appropriate where the defects "do not affect the substantial rights of the defendant and the record is sufficient to establish the defendant's guilt." *Long*, ¶ 24 (quoting *Brady*, ¶ 14). With regard to juror contact or misconduct, "the Constitution does not require a new trial each time a juror is placed in a potentially compromising situation" because it is "virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *State v. Hage*, 258 Mont. 498, 503-04, 853 P.2d 1251, 1254 (1993) (citing *Rushen v. Spain*, 464 U.S. 114, 118-19, 104 S. Ct. 453, 455-56 (1983)) (internal quotations omitted). Accordingly, where there is juror misconduct, in order to receive a new trial, the defendant bears the initial burden of demonstrating that the misconduct actually injured or prejudiced the defendant. *State v. McNatt*, 257 Mont. 468, 472, 849 P.2d 1050, 1052-53 (1993).

¶13    Although White asserts that Lindbergh's impermissible comment prejudiced the jury and the District Court erred by not granting a mistrial, his claim of prejudice fades

when the record is considered. Campbell promptly notified the baliff of the outside communication which had entered the jury room and, in response, the court immediately questioned Campbell and Lindbergh. Both Campbell and Lindbergh informed the court that the other jurors promptly stopped Lindbergh from continuing and agreed not to consider the information in their deliberations. The District Court then gave a cautionary instruction to the jury. Thereafter, the jury continued their deliberations for another four hours, during which time the jury sent out questions to the court about issues they were considering, evidencing their serious consideration of the evidence, instructions, and verdict. We do not presume that the jury ignored its duty to respect the instructions of the court, *Dubois*, ¶ 60, and it appears from the record that the deliberations which followed were entirely appropriate.

¶14     Further, the general rule is that a cautionary instruction cures any error committed by the introduction of improper information. *Dubois*, ¶ 60. While White contends that the court should have given a more specific cautionary instruction and questioned each juror individually, we conclude that under these circumstances the District Court did not abuse its discretion by refusing to do so. The two jurors questioned gave similar versions of what had occurred in the jury room in response to Lindbergh's comments and, as the State points out, a more specific cautionary instruction and individual questioning may have risked the possibility of prompting the opposite effect—drawing more attention to the inappropriate comment. The District Court assessed the situation carefully, first questioning Lindbergh and Campbell individually and then giving the entire jury a

cautionary instruction, and by so doing acted reasonably under the circumstances to cure any prejudice that may have arisen by way of the comments.

¶15 Finally, the District Court correctly considered the "strength of the evidence" in the case in making its determination. *Long*, ¶ 24. The court noted that there was "overwhelming evidence" that White was guilty of deliberate homicide. Eleven eyewitnesses testified about the fight. Several witnesses indicated that White was the initial aggressor of the fight and continued to attack Gary even as Gary attempted to retreat. Testimony included statements made by White that he intended for Gary to die. Moreover, White himself testified that he knew Gary was unarmed and that he was the aggressor in the fight. In light of this evidence, we cannot conclude that the District Court's assessment of the impact of the comment upon the trial was incorrect.

¶16 For these reasons, and being mindful that the district court is "given a latitude of discretion in its rulings on motions for mistrial" as it is in the "best position to observe the jurors[,]" *Dubois*, ¶ 61, we conclude that the District Court did not clearly abuse its discretion by denying White's motion for a mistrial.

¶17 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER

9