DA 08-0634

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 85

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CURRY JAMES NORQUAY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                    In and For the County of Cascade, Cause No. DDC 2007-406
                    Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Joslyn Hunt, Chief Appellate Defender, Lisa S. Korchinski, Assistant
            Appellate Defender, Helena, Montana

            Jason T. Holden, Faure Holden Attorneys at Law, P.C.,
            Great Falls, Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General, John Paulson, Assistant
            Attorney General, Helena, Montana

            John Parker, Cascade County Attorney, Joel Thompson, Deputy County
            Attorney, Great Falls, Montana

Submitted on Briefs:  March 3, 2010

Decided:  April 20, 2010

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Curry James Norquay (Norquay) appeals from the judgment of conviction and sentencing order of the Eighth Judicial District Court, Cascade County, for aggravated burglary, a felony, in violation of § 45-6-204(2)(b), MCA, and unlawful restraint, a misdemeanor, in violation of § 45-5-301, MCA.  We affirm.

¶2     We review the following issue on appeal:

¶3     *Did the District Court abuse its discretion when it denied Norquay's motion for a mistrial based on the selection of the jury panel?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     The State charged Norquay with aggravated burglary, assault, and kidnapping for Norquay's role in a home invasion, assault on the homeowner, and abduction of the homeowner's child.  Norquay's jury trial for these charges began in September 2008.

¶5     During voir dire on the first day of Norquay's trial, counsel for Norquay raised a concern about the way in which the Cascade County Clerk of Court (Clerk) had selected the jury panel.  The panel had been drawn from the list of registered voters.  Counsel argued that, due to a recent change in the law, Norquay was entitled to a jury panel drawn from a list that included licensed drivers, as well as those registered to vote.  *See* § 61-5-127(1), MCA (2007).  He maintained that the law concerning jury panel selection had changed in May 2008, and that Cascade County had not complied with the revised law.  Counsel subsequently moved for a mistrial based on the fact that the jury panel excluded potential jurors who held driver's licenses but were not registered to vote.

3

¶6 The District Court asked the Clerk to testify about the selection process. The Clerk testified that the panel for Norquay's trial had been pulled from a list of registered voters. She stated that she had received a combined list of registered voters and licensed drivers from the Secretary of State's Office in May 2008, as required by the new law. She did not download the list into her computer system immediately, however. Instead, she contacted the Supreme Court Administrator's Office for technical assistance. A representative from the Administrator's Office advised the Clerk not to download the combined list until November because Cascade County starts the jury selection process anew in November of each year. The jury term begins the following March and runs for one year.

¶7 The Clerk testified that she had discussed this matter further with the Administrator's Office and was told that the new law only required that the Secretary of State's Office release the new list in May 2008, and that the law did not mandate that county clerks start using the new list at any specific time. The Clerk testified that it was her plan to use the new list to form jury panels for the annual jury term beginning in March 2009.

¶8 The Clerk further testified that it takes her anywhere from three to four months to send out jury notices and questionnaires, process the information returned to her office, and complete the preparations required for the new jury term beginning in March. She acknowledged that other counties start their jury terms at different times and that some other counties might have started using the list already.

¶9 The District Court subsequently issued an oral ruling denying Norquay's motion for a mistrial. The court examined § 61-5-127(1), MCA, which provides that the Department of Justice "shall submit to the secretary of state a list, prepared from the department's databases of licensed drivers and holders of Montana identification cards, showing the name, address, and date of birth of all licensed drivers and holders of Montana identification cards." The last sentence of the statute states that "[t]he list must be provided for the exclusive purpose of making a list of persons to serve as trial jurors for the *ensuing year*." (Emphasis added.)

¶10 Moreover, under § 3-15-402, MCA, the Secretary of State "shall select from the most recent list of all registered electors and make a list of the names of all persons qualified to serve as trial jurors." The Secretary of State must then combine this list with the list compiled pursuant to § 61-5-127(1), MCA, and deliver it to the Clerk on or before the first Monday in May. *See* § 3-15-403, MCA.

¶11 The court concluded that the "Legislature intended, and the express language of the current law provides, that the first combined jury list would be provided to the Clerks of Court by the Secretary of State, on or before the first Monday of May [2008]." The court determined that "the Clerk would use the combined list that it received, for the first time in May of 2008, to prepare a Jury Panel from the combined list for the ensuing year, which in this case would [be] calendar year 2009." In essence, the District Court concluded that while the Secretary of State was required to deliver the combined list to the Clerk in May 2008, the Clerk was not required to use the list until she compiled the jury panel list for the 2009 annual jury term. The court stated that "the effect of this is, is

5

[sic] that the Legislature has built into this process, essentially, a six-month advance period for the Clerk of Court to receive the list from the Secretary of state in May of each year, process that list and prepare it to be implemented for the ensuing calendar year starting in January." According to the court, therefore, "ensuing year" meant ensuing calendar year.

¶12 Norquay's jury trial proceeded after the District Court had denied his motion for a mistrial. The assault charge was dismissed. The jury ultimately found Norquay guilty of aggravated burglary and unlawful restraint. Norquay appeals.

## STANDARD OF REVIEW

¶13 A district court's decision on a motion for a mistrial must be based upon whether the party has been denied a fair and impartial trial, and the decision on the motion is reviewed to determine whether the court abused its discretion. *State v. White*, 2008 MT 129, ¶ 8, 343 Mont. 66, 184 P.3d 1008 (citing *State v. Dubois*, 2006 MT 89, ¶ 33, 332 Mont. 44, 134 P.3d 82).

¶14 We observe that Norquay lists two applicable standards of review. He states that "[t]he standard of review for denial of a motion for a mistrial is whether there is clear and convincing evidence that the district court's ruling is erroneous." His next paragraph, however, begins with the statement: "A district court's grant or denial of a motion for a mistrial is reviewed for an abuse of discretion." We concluded in *State v. Partin*, 287 Mont. 12, 951 P.2d 1002 (1997), that we will review a district court's ruling on a motion for a mistrial to determine whether the court abused its discretion. *Partin*, 287 Mont. at

6

17-18, 951 P.2d at 1005. The "clear and convincing evidence" standard is not the proper standard for this Court's review of a district court's ruling on a motion for a mistrial.

## DISCUSSION

¶15 *Did the District Court abuse its discretion when it denied Norquay's motion for a mistrial based on the selection of the jury panel?*

¶16 Norquay argues on appeal that the District Court erred in interpreting references to "ensuing year" in the applicable statutory scheme to mean ensuing calendar year. Norquay contends that "[n]owhere in the statutes concerning jury selection does it state 'ensuing year' means 'ensuing calendar year' as concluded by the district court." Norquay maintains that earlier versions of the statutes support the position that ensuing year means "beginning in June."

¶17 According to Norquay, therefore, the Clerk failed to substantially comply with the statutes governing jury selection. "That the clerk's office did not even attempt to follow the law is more than a mere technical irregularity and evades the substantial compliance standard." Norquay directs our attention to *State v. LaMere*, 2000 MT 45, ¶ 57, 298 Mont. 358, 2 P.3d 204 ("A substantial failure to comply encompasses a statutory violation that affects the 'random nature or objectivity of the selection process.'" (quoting *United States v. Kennedy*, 548 F.2d 608, 612 (5th Cir. 1977))), and argues that the Clerk's error in selecting Norquay's jury panel constitutes structural error. Norquay maintains that he did not receive a "fair and impartial trial or jury panel." He asks this Court to reverse the District Court's order denying his motion for a mistrial.

7

¶18 We agree with the parties and the District Court that the dispositive issue in this case is what is meant by the term "ensuing year." Section 61-5-127(1), MCA, states that the compiled list "must be provided for the exclusive purpose of making a list of persons to serve as trial jurors for the *ensuing year*." (Emphasis added.) The statutory scheme does not define the term "ensuing year."

¶19 The burden to demonstrate an abuse of discretion is on the party seeking reversal of an unfavorable ruling. *State v. Devlin*, 2009 MT 18, ¶ 15, 349 Mont. 67, 201 P.3d 791 (citing *State v. Price*, 2006 MT 79, ¶ 17, 331 Mont. 502, 134 P.3d 45). We observe that where a statute does not define a key term, and where that key term is subject to two different plausible interpretations, the defendant carries a heavy burden to demonstrate that the District Court abused its discretion. *Cf. State v. McCarthy*, 2004 MT 312, ¶ 41, 324 Mont. 1, 101 P.3d 288 ("A district court's determination of whether to grant a motion for a mistrial must be based on whether the defendant *has been denied a fair and impartial trial*." (Emphasis added.)).

¶20 We interpret a statute by looking first to the statute's plain language, and if the language is clear and unambiguous, no further interpretation is required. *See State v. Johnston*, 2008 MT 318, ¶ 26, 346 Mont. 93, 193 P.3d 925. The State maintains that the District Court reasonably viewed "ensuing year" as meaning the following calendar year. Norquay argues that the term means "beginning in June." We conclude that the plain meaning of the term "ensuing year" is broad enough to encompass either the State's or Norquay's proffered interpretations.

¶21   We also observe that the record reflects that counties across the state begin their annual jury terms at different times of the year. The Clerk testified that she had "been advised they're all different." She had previously attended the Clerk's Convention and "some of [the counties] were discussing the problems they were having with" the combined jury list. She testified that some counties were using the combined list in June and some, like Cascade County, were not.

¶22   Having carefully reviewed the record in this case, the District Court's order, and the briefs of both parties, we conclude that the District Court did not abuse its discretion in denying Norquay's motion for a mistrial. The term "ensuing year" is ambiguous, and Norquay has failed to carry his burden to demonstrate that the District Court abused its discretion in interpreting the statutory scheme at issue and in denying his motion for a mistrial.

**CONCLUSION**

¶23   The District Court did not abuse its discretion when it denied Norquay's motion for a mistrial based on the manner of selection of the jury panel.

¶24   Affirmed.

/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

9

/S/ MICHAEL E WHEAT
/S/ JIM RICE

Justice James C. Nelson, dissenting.

¶25 Respectfully, I dissent from the Court's decision.

¶26 First, I disagree with the Court's standard of review. Opinion, ¶ 13. In the context of motions for a *new trial*, this Court has explained that our standard of review depends on the basis of the motion. *See Giambra v. Kelsey*, 2007 MT 158, ¶¶ 24-27, 338 Mont. 19, 162 P.3d 134 (clarifying that our standard of review of a trial court's ruling on a motion for a new trial based on insufficiency of the evidence is de novo, not manifest abuse of discretion, given that the trial court's conclusion as to whether sufficient evidence exists to convict is ultimately an analysis and application of the law to the facts, not a matter of discretion). The same principle necessarily applies to motions for a *mistrial*: the standard of review depends on the basis of the motion and, in particular, the process the district court applies in resolving that motion. Indeed, the standard of review in any given case depends on the particular posture of the issues and arguments, not just on how a party's motion happens to be captioned or denominated. For example, in *State v. Shively*, 2009 MT 252, 351 Mont. 513, 216 P.3d 732, the Court explained:

> Given the particular posture of the issues and arguments, *and our resolution of this appeal by an interpretation of the theft statute*, we have not cited the standard of review for challenges to the sufficiency of the evidence, under which we review the evidence in a light most favorable to the prosecution and determine whether a rationale [sic] trier of fact could

10

have found the defendant guilty of the crime beyond a reasonable doubt. The issue raised by Shively does not ultimately require us to review evidence, *and therefore we review the legal issue raised here, a matter of statutory interpretation, de novo for correctness*.

*Shively*, ¶ 13 (emphases added; citation omitted).

¶27 The dispositive issue in the present case is, likewise, one of statutory interpretation. It is axiomatic that a trial court does not exercise discretion when interpreting a statute. Either the court's interpretation is correct, or it isn't. No discretion is involved. Accordingly, our review here is de novo. *Shively*, ¶ 13; *see also State v. Triplett*, 2008 MT 360, ¶ 13, 346 Mont. 383, 195 P.3d 819 ("[T]he interpretation and construction of a statute is a matter of law and we review whether the district court interpreted and applied a statute correctly de novo."); *Funke v. Estate of Shultz*, 2009 MT 411, ¶ 6, 353 Mont. 492, 223 P.3d 839 ("Our standard of review of the interpretation and application of a statute to particular circumstances is whether the district court was correct as a matter of law."); *State v. Brown*, 2009 MT 452, ¶ 6, 354 Mont. 329, 223 P.3d 874 ("The interpretation and construction of a statute is a matter of law which we review de novo to determine whether the district court's interpretation and construction of the statute is correct.").

¶28 The Court cites *State v. White*, 2008 MT 129, ¶ 8, 343 Mont. 66, 184 P.3d 1008, and *State v. McCarthy*, 2004 MT 312, ¶ 41, 324 Mont. 1, 101 P.3d 288, in support of the abuse of discretion standard of review. Opinion, ¶¶ 13, 19. First of all, this standard may be traced to *State v. Partin*, 287 Mont. 12, 15-18, 951 P.2d 1002, 1004-05 (1997), where we straightened out the standard of review with respect to motions for a mistrial based on

erroneously admitted evidence. We explained that the "denial of a fair and impartial trial" standard applies when a trial court determines whether to grant a mistrial moved for or consented to by the defendant and that we review the trial court's ruling under this standard for an abuse of discretion. These standards make sense when the question is whether erroneously admitted evidence or some other misstep during the course of trial is at issue.

¶29 But here, we are dealing with an alleged defect in the trial mechanism itself (specifically, with the composition of the jury), and it is well-settled that such defects are not subject to a subjective analysis of whether the defendant was denied a fair and impartial trial. *See State v. Van Kirk*, 2001 MT 184, ¶ 39, 306 Mont. 215, 32 P.3d 735 ("Examples of structural error include errors in the jury selection process . . . ."); *State v. LaMere*, 2000 MT 45, ¶¶ 26, 39-50, 298 Mont. 358, 2 P.3d 204 (errors in the jury-selection process are structural in nature and, therefore, cannot be assessed for prejudicial impact relative to the other evidence introduced at trial). The District Court's analysis, in turn, involved the interpretation and construction of statutory language; and nothing in the cited paragraphs of *White* and *McCarthy* stands for the proposition that we resolve interpretational questions involving admittedly ambiguous statutes utilizing the abuse of discretion standard. Indeed, that is contrary to our law and precedent cited above.

¶30 Similarly, nothing in ¶ 41 of *McCarthy* stands for the unique proposition that when a statute is ambiguous, a defendant "carries a heavy burden to demonstrate that the District Court abused its discretion." Opinion, ¶ 19. Where, as here, a statute is subject to more than one reasonable but conflicting interpretation, it is ambiguous and we resort

12

to legislative history and intent to resolve the ambiguity. As we stated in *State v. Johnston*, 2008 MT 318, 346 Mont. 93, 193 P.3d 925:

> Our purpose in construing a statute is to ascertain the legislative intent and give effect to the legislative will. We interpret a statute by looking first to the statute's plain language, and if the language is clear and unambiguous no further interpretation is required. *We resolve ambiguous terms, however, by looking to the structure, purpose and/or legislative history of a statute to determine the intent of the Legislature.*

*Johnston*, ¶ 26 (emphasis added; citations omitted).

¶31 Applying our precedents, then, we should review the District Court's statutory interpretation de novo. And, given that the statute at issue is ambiguous, we should look to the structure, purpose, and legislative history of the statute to determine the Legislature's intent. There is simply no basis for using an abuse of discretion standard.

¶32 Second, in addition to the Court's standard of review, I disagree with the Court's statutory construction. It is indisputable that the Legislature's intent in amending §§ 3-15-402 to -404 and 61-5-127, MCA, was to increase the jury pool so as to include not only registered voters but also licensed drivers. The Legislature clearly intended to broaden the cross section of the community available for jury duty and actually serving on juries. Additionally, the legislative history discloses that the purpose of moving up the timing of the jury list/term was so that the jury-selection process could begin a month earlier and jury terms could run concurrently with the county's fiscal year. *See* Mont. H. Jud. Comm., *Revise Jury Pool Laws: Hearing on HB 341*, 60th Leg., Reg. Sess., Ex. 17 at 3 (Jan. 24, 2007).

¶33 With that stated legislative intent and history, it makes little sense that each clerk of district court should be able to establish her or his own rules vis-à-vis when to use the combined jury list sent out by the Secretary of State. Yet, under the Court's holding today—namely, that "ensuing year" encompasses *both* the following calendar year *and* beginning in June, Opinion, ¶ 20—we have effectively abdicated our duty to interpret the statute and allowed each clerk of district court to choose what that phrase will mean for her or his particular county. Thus, it could mean "the following calendar year," as the District Court surmised, "beginning in June," as Norquay argues, "beginning in November," to correspond with Cascade County's jury-selection process, "beginning in March," to correspond with the County's jury term, or some other date. *See* Opinion, ¶¶ 6, 20. And, given this holding, it makes little sense for me to offer an interpretation of "ensuing year," as I am not a clerk of district court and, thus, my opinion is not only irrelevant, but also no better than any one of the 22 district court clerks' opinions.

¶34 While it is unfortunate that personnel from the Supreme Court Administrator's Office offered what amounts to legal advice to the Cascade County Clerk of District Court on how to interpret the statutory amendments at issue, *see* Opinion, ¶¶ 6-7, that does not excuse the Clerk of District Court from relying on that advice. Giving advice about how to interpret ambiguous statutes for county elected officials is not the job of Supreme Court Administrator's Office staff. A clerk of district court well knows that if she or he is confused about how to interpret a statute, she or he should seek legal advice from the county's legal adviser, the county attorney. *See* § 7-4-2711(2)(a), MCA ("The county attorney shall . . . give, when required and without fee, an opinion in writing to the

14

county, district, and township officers on matters relating to the duties of their respective offices . . . .").[1]  Indeed, the record here reflects that the Cascade County Attorney was under the impression that the Cascade County Clerk of District Court had drawn Norquay's jury venire from the combined voter/licensed-driver list, as the law requires, and that the Clerk of District Court should have known better for not drawing the jury from the combined list.[2]

¶35   A criminal defendant in Cascade County is entitled to the same benefit of the law as a criminal defendant in Toole County or Yellowstone County or Missoula County. Each clerk of district court is not a law unto herself or himself.  Each does not have authority to interpret the law according to her or his own convenience and provincial practice.  The availability and application of the law is not subject to some sort of "luck of the draw" rule as to the judicial district in which the crime was committed.

¶36   It is well-established that errors in the jury-selection process are structural errors, which are not amenable to no-harm, no-foul analysis.  *Van Kirk*, ¶¶ 38-39; *LaMere*, ¶¶ 26, 39-50.  Structural errors are defects in the framework within which a trial proceeds.  As such, they undermine the fairness of the entire trial proceeding and are presumptively prejudicial. Thus, errors in the jury-selection process require a new trial.

---

[1] And, if the county attorney is unable to answer the inquiry, an opinion may be requested from the Attorney General.  *See* § 2-15-501(7), MCA.

[2] This is not the first case to come before this Court involving errors of the Cascade County Clerk of District Court's office caused by its drawing juries according to its convenience and its own extra-legal procedures.  *See State v. Robbins*, 1998 MT 297, 292 Mont. 23, 971 P.2d 359; *State v. LaMere*, 2000 MT 45, 298 Mont. 358, 2 P.3d 204; *Robbins v. State*, 2002 MT 116, 310 Mont. 10, 50 P.3d 134.

*See Van Kirk*, ¶¶ 38-39; *LaMere*, ¶¶ 26, 48; *see also State v. Lamere*, 2005 MT 118, ¶ 25, 327 Mont. 115, 112 P.3d 1005.

¶37    Obviously, the Legislature had one meaning in mind when it used the phrase "ensuing year" in § 3-15-404(6), MCA.  Since the Legislature did not have the foresight to define that phrase, it is our job to articulate what its meaning is and to require the clerks of the district courts of Montana to apply that meaning uniformly.

¶38    Because of the parochial practice of the Cascade County Clerk of District Court, Norquay did not get the benefit of being tried by the broad cross section of the community that the Legislature mandated.  This error is structural, and Norquay is entitled to a new trial.[3]

¶39    I would reverse and remand for a new trial.  I dissent from our failure to do so.

/S/ JAMES C. NELSON

---

[3] To the extent it could be argued that this conclusion (which I believe is the only one permitted under our precedents) might result in a flood of appeals by other defendants, that consideration is obviously secondary not only to this Court's duty to follow and uphold the law, but also, and more importantly, to every criminal defendant's fundamental constitutional right to trial by a fair and impartial jury properly selected according to statutory procedures.  *See LaMere,* 2000 MT 45, ¶ 19.