DA 06-0169

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 318

STATE OF MONTANA,

> Plaintiff and Appellee,

v.

BRIAN ANTHONY JOHNSTON,

> Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 01-24
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:

> Noel K. Larrivee, Attorney at Law, Polson, Montana

> For Appellee:

> Hon. Mike McGrath, Attorney General; Joslyn Hunt, Assistant Attorney General, Helena, Montana

> Robert A. Long, Lake County Attorney; Mitchell Young, Deputy County Attorney, Polson, Montana

Submitted on Briefs:  October 26, 2007

Decided:  September 12, 2008

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court

¶1	Brian Anthony Johnston (Johnston) appeals from the Order of the Twentieth Judicial District Court, Lake County, denying his Motion to Set Aside Revocation and Petition for Post-conviction Relief.  We affirm.

¶2	We review the following issues on appeal:

¶3	*Does § 46-21-105(2), MCA, bar Johnston's claim that the District Court revoked his probation in violation of the procedures set forth in § 46-23-1012(4), MCA?*

¶4	*Did the District Court correctly determine that the State did not violate the procedures set forth in § 46-23-1012(4), MCA, when the State sought to revoke Johnston's probation?*

¶5	*Did the 21-day period of incarceration between Johnston's arrest and his probation revocation hearing deny him due process of law?*

¶6	*Did the District Court subject Johnston to double jeopardy when it revoked Johnston's suspended sentence for alleged probation violations for which he previously had been arrested?*

¶7	*Was Johnston denied effective assistance of counsel in his revocation proceedings?*

**FACTUAL AND PROCEDURAL HISTORY**

¶8	The Lake County Attorney (State) charged Johnston on March 9, 2001, with felony Sexual Intercourse Without Consent and felony Persons Required to Register (Failure to Register as a Sex Offender).  Johnston and the State entered into a plea agreement on May 10, 2001, whereby Johnston agreed to plead guilty to the charge of Failure to Register as a

2

Sex Offender, and the State agreed to dismiss the charge of Sexual Intercourse Without Consent. Johnston and the State agreed to recommend that the District Court sentence Johnston to four years in Montana State Prison, with all but 36 days suspended. Johnston and the State also agreed to recommend that the District Court place Johnston on probation for the balance of his suspended sentence. The court accepted the plea agreement and imposed Johnston's sentence pursuant to the terms of the plea agreement.

¶9 Johnston was arrested on October 13, 2001, in Lake County for an alcohol-related incident. Johnston's State Probation and Parole Officer Dave Weaver (Officer Weaver) issued a "Warrant to Arrest and Hold" Johnston the next day, alleging that Johnston had violated two "special conditions" of his probation in light of the fact that "Johnston was allegedly intoxicated in Lake County, MT," on October 13, 2001, and that Johnston had "refused to submit to an alcohol breath test."

¶10 The Ronan City Police arrested Johnston again on November 30, 2001, in Lake County for Partner/Family Member Assault and Obstructing a Police Officer. Officer Weaver issued a second "Warrant to Arrest and Hold" Johnston on December 1, 2001. Officer Weaver's "Warrant to Arrest and Hold" alleged that various charges pending against Johnston also constituted probation violations. Officer Weaver recommended a bond of $10,000. Officer Weaver then filed a Petition for Suspected Violation of Probation on December 3, 2001, and filed a "Report of Violation" on December 11, 2001.

¶11 Weaver alleged in the "Report of Violation" that Johnston had committed the following probation violations: (1) Johnston had pled guilty to driving with a suspended

3

license; (2) the police had arrested and charged Johnston on [November 30, 2001], with Partner/Family Member Assault and Obstructing a Peace Officer; (3) Johnston had tested positive for marijuana on August 6, 2001; (4) Johnston had failed to pay a $45.00 supervision fee in November 2001; (5) Johnston had submitted to a blood-alcohol test that indicated his blood-alcohol level was ".018 mg%."; and (6) Johnston had refused to submit to an alcohol breathalyzer test. Officer Weaver recommended in his "Report of Violation" that Johnston "be returned to the District Court for a formal revocation hearing." The State filed a petition to revoke Johnston's probation that same day.

¶12    Johnston appeared in the District Court to answer to the alleged probation violations on December 20, 2001. The District Court found that Johnston's admission to several of the charges was sufficient to revoke Johnston's suspended sentence for the charge of Failure to Register as a Sex Offender. The court sentenced Johnston to four years in Montana State Prison with all but 75 days suspended and credit for time served. Johnston did not appeal.

¶13    The State released Johnston after he had served 20 days in jail, but he was arrested several more times throughout 2002 and 2003 for various crimes and probation violations. Johnston eventually admitted at a hearing on March 10, 2005, to numerous probation violations, and the District Court found these admissions sufficient to revoke Johnston's suspended sentence. The District Court sentenced Johnston on March 17, 2005, to four years in Montana State Prison. Johnston did not appeal. Johnston filed a "Motion to Set Aside Revocation and Petition for Post-Conviction Relief" on January 3, 2006, alleging that the

4

District Court's December 20, 2001, revocation violated state and federal law. The District Court denied Johnston's motion on February 9, 2006. This appeal followed.

## STANDARD OF REVIEW

¶14 We review *de novo* a grant or denial of a motion to dismiss in a criminal case. *State v. Mallak*, 2005 MT 49, ¶ 13, 326 Mont. 165, ¶ 13, 109 P.3d 209, ¶ 13.

## DISCUSSION

## ISSUE ONE

¶15 *Does § 46-21-105(2), MCA, bar Johnston's claim that the District Court revoked his probation in violation of the procedures set forth in § 46-23-1012(4), MCA?*

¶16 The State argues for the first time on appeal that § 46-21-105(2), MCA, bars Johnston's claim that the State failed to comply with § 46-23-1012(4), MCA. Section 46-21-105(2), MCA, provides that "[w]hen a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a proceeding brought under this chapter." The State points to the fact that Johnston failed to raise the alleged violation of § 46-23-1012(4), MCA, in a direct appeal from his December 20, 2001, revocation proceedings.

¶17 We normally do not review an argument made for the first time on appeal. *State v. Osborne*, 2005 MT 264, ¶ 11, 329 Mont. 95, ¶ 11, 124 P.3d 1085, ¶ 11. The State argues, however, that it can raise the § 46-21-105(2), MCA, procedural bar for the first time on appeal in light of the fact that this provision represents a limit on a district court's subject

5

matter jurisdiction that can be raised at any time.

¶18 The State relies on a line of cases beginning with *Peña v. State*, 2004 MT 293, 323 Mont. 347, 100 P.3d 154, where we permitted the State to argue for the first time on appeal that a petition for post-conviction relief was time barred in light of § 46-21-102, MCA. We held in *Peña* that "because the time bar is jurisdictional, it cannot be waived by the State by failing to raise the issue in the District Court." *Peña*, ¶ 35. We have concluded recently in *Davis v. State*, 2008 MT 226, 344 Mont. 300, 187 P.3d 654, however, that the Legislature's enactment of a one-year time bar on the filing of petitions for post-conviction relief did "not circumscribe a district court's subject matter jurisdiction." *Davis*, ¶ 23. We determined that the Montana Constitution grants the district courts subject matter jurisdiction over post-conviction relief. We overruled *Peña* and other cases "to the extent they have held that the Legislature limited district courts' subject matter jurisdiction . . ." by codifying a statutory time bar on post-conviction relief. *Davis*, ¶ 23.

¶19 Section 46-21-105(2), MCA, represents a similar statutory limitation on post-conviction relief, and, thus, "does not circumscribe a district court's subject matter jurisdiction." *Davis*, ¶ 23. Like the statutory time bar in *Davis*, § 46-21-105(2), MCA, represents merely a rigid statutory prescription governing post-conviction petitions. The Iowa Supreme Court reached a similar conclusion in *DeVoss v. State*, 648 N.W.2d 56 (Iowa 2002). There a statute required post-conviction relief applicants to raise all available grounds for relief in their original petitions. *DeVoss*, 648 N.W.2d at 63. The court previously had interpreted the statute "'to impose a burden upon a post[-]conviction

6

applicant to show sufficient reasons why any ground for relief asserted in a post[-]conviction relief petition was not previously asserted on *direct appeal*.'" *DeVoss*, 648 N.W.2d at 63 (quoting *Bugley v. State*, 596 N.W.2d 893, 896 (Iowa 1999)) (emphasis in *DeVoss*). The State raised for the first time on appeal DeVoss's failure to raise in her direct appeal a claim of ineffective assistance of counsel. The court determined that the State's failure to raise the defect in the trial court waived the claim on appeal: "Because error preservation is based on fairness, we think *both* parties should be bound by the rule." *DeVoss*, 648 N.W.2d at 63 (emphasis in original).

¶20 We agree that our general rule regarding error presentation binds both parties in a post-conviction relief proceeding. We note again, however, that nothing in our ruling "precludes a court from raising, sua sponte . . ." the prescription set forth in § 46-21-105(2), MCA. *Davis*, ¶ 24. A trial court may raise the prescription set forth in § 46-21-105(2), MCA, on its own initiative, however, only after the court "afford[s] the parties fair notice and an opportunity to present their positions . . . ." *Davis*, ¶ 24. The court also must "determine whether 'the interests of justice would be better served' by addressing the merits or by dismissing the petition . . ." pursuant to § 46-21-105(2), MCA. *Davis*, ¶ 24 (quoting *Day v. McDonough*, 547 U.S. 198, 210, 126 S. Ct. 1675, 1684 (2006)).

¶21 Section 46-21-105(2), MCA, does not limit a district court's subject matter jurisdiction. *Davis*, ¶ 23. The State, therefore, waived the procedural bar found in § 46-21-105(2), MCA, by raising it for the first time on appeal.

**ISSUE TWO**

7

¶22    *Did the District Court correctly determine that the State did not violate the procedures set forth in § 46-23-1012(4), MCA, when the State sought to revoke Johnston's probation?*

¶23    Johnston points out that § 46-23-1012(4), MCA, provides that "[i]f the probationer is detained and bond is set, the probation and parole officer shall file a report of violation within 10 days of the arrest of the probationer."  Johnston argues that Officer Weaver violated § 46-23-1012(4), MCA, when Officer Weaver filed his "Report of Violation" on December 11, 2001, eleven days after the police had arrested Johnston for Partner/Family Member Assault and Obstructing a Police Officer.

¶24    The State concedes that Officer Weaver filed the "Report of Violation" eleven days after Johnston's initial arrest.  The State points to the fact, however, that Officer Weaver filed his "Report of Violation" within ten days of the time that Officer Weaver had filed his "Warrant to Arrest and Hold" Johnston on December 1, 2001.  The State asserts that the ten-day limit in § 46-23-1012(4), MCA, did not begin to run when the police arrested Johnston on November 30, 2001.  The State argues that the ten-day limit in § 46-23-1012(4), MCA, began to run only when the probation officer, Officer Weaver, initiated an arrest pursuant to § 46-23-1012, MCA.

¶25    We have acknowledged that § 46-23-1012, MCA, contemplates dual revocation proceedings.  *Gonzales v. Mahoney*, 2001 MT 259, ¶ 11, 307 Mont. 228, ¶ 11, 37 P.3d 653, ¶ 11. We have explained that the manner in which the State initiates revocation proceedings will determine which of the requirements set forth in § 46-23-1012, MCA, will apply.  *State*

8

*v. Finley*, 2003 MT 239, ¶ 20, 317 Mont. 268, ¶ 20, 77 P.3d 193, ¶ 20. The State must bring a probationer arrested pursuant to a bench warrant before the court "without unnecessary delay" under §§ 46-23-1012(1) and 46-18-203, MCA. *Finley*, ¶ 20. The State must follow the requirements set forth in § 46-23-1012(2)-(5), MCA, on the other hand, when the State arrests the probationer pursuant to an arrest initiated by a probation officer under § 46-23-1012(2), MCA. *Finley*, ¶ 20; *Gonzales*, ¶ 11. Section 46-23-1012, MCA, does not address, however, the State's obligations when a probationer is arrested on grounds independent from the violation of a condition of probation.

¶26 We must determine whether the word "arrest" in § 46-23-1012(4), MCA, refers to any arrest initiated for any reason, or, more specifically, to an arrest initiated pursuant to the procedures outlined in § 46-23-1012, MCA. Our purpose in construing a statute is to ascertain the legislative intent and give effect to the legislative will. *S.L.H. v. State Compensation Mut. Ins. Fund*, 2000 MT 362, ¶ 16, 303 Mont. 364, ¶ 16, 15 P.3d 948, ¶ 16. We interpret a statute by looking first to the statute's plain language, and if the language is clear and unambiguous no further interpretation is required. *Small v. Board of Trustees*, 2001 MT 181, ¶ 21, 306 Mont. 199, ¶ 21, 31 P.3d 358, ¶ 21. We resolve ambiguous terms, however, by looking to the structure, purpose and/or legislative history of a statute to determine the intent of the Legislature. *S.L.H.*, ¶ 16; *State v. Knudson*, 2007 MT 324, ¶ 23, 340 Mont. 167, ¶ 23, 174 P.3d 469, ¶ 23.

¶27 The plain meaning of the word "arrest" as used in the statute is ambiguous. It could refer to the specific type of arrest a probation officer initiates pursuant to § 46-23-1012(2),

MCA, or it could refer to the more general type of arrest that a police officer initiates, for example, pursuant to probable cause. We agree with the State that the structure of § 46-23-1012, MCA, indicates that the Legislature intended the term "arrest" to have the more specific meaning. We note that § 46-23-1012, MCA, addresses only two possible ways that a probationer may be "arrested" on grounds of an alleged probation violation: (1) the probation officer may ask the court to issue a warrant; or (2) the probation officer may arrest the probationer or may authorize a police officer to arrest the probationer. Section 46-23-1012(1)-(2), MCA. We also note that § 46-23-1012(3), MCA, provides that the probation officer may authorize a detention center to hold for up to 72 hours a probationer who was arrested pursuant to § 46-23-1012, MCA.

¶28 We note additionally that Johnston's interpretation of the term "arrest" in § 46-23-1012(4), MCA, could lead to absurd results. Johnston's interpretation would mean that the ten-day limit found in § 46-23-1012(4), MCA, would begin to run when a probationer is arrested based upon facts that also may happen to establish a probation violation, regardless of whether the probation officer is aware of the arrest. This interpretation could lead the State unknowingly to waive its right to revoke probation if the arresting officer fails to communicate the arrest of a probationer to the probation officer in sufficient time for the probation officer to file a report. We conclude that the structure of § 46-23-1012, MCA, indicates that the Legislature intended to limit the term "arrest" in subsection (4) to the specific types of arrests that subsection (2) permits a probation officer to initiate. We further conclude that the State correctly followed the procedures required under § 46-23-1012(4),

10

MCA, when it filed its "Report of Violation" within ten days of Officer Weaver issuing a "Warrant to Arrest and Hold" Johnston.

## ISSUE THREE

¶29 *Did the 21-day period of incarceration between Johnston's arrest and his probation revocation hearing deny him due process of law?*

¶30 Johnston argues that the State violated his due process rights, as guaranteed by the Untied States Constitution, by holding him in custody for 21 days with no preliminary hearing to establish probable cause for his alleged probation violations. Johnston acknowledges that no statutory authority exists for requiring the State to provide a preliminary probable cause hearing. *State v. Goebel and Giddings*, 2001 MT 155, ¶ 3, 306 Mont. 83, ¶ 3, 31 P.3d 340, ¶ 3, *abrogated in part on other grounds*, *Gundrum v. Mahoney*, 2001 MT 246, ¶ 12, 307 Mont. 96, ¶ 12, 36 P.3d 890, ¶ 12; *see also Finley*, ¶ 20 (explaining which statutory requirements apply to revocation proceedings); *Gonzales*, ¶ 11 (same). Johnston asserts that case law establishes that the due process requirement of the United States Constitution requires the State to provide a preliminary probable cause hearing. Johnston relies solely on *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S. Ct. 1661 (1991), where the United States Supreme Court held that persons subjected to warrantless arrests normally must be provided a judicial determination of probable cause within 48 hours of the warrantless arrest. Johnston argues that the State's failure to provide a preliminary hearing on probable cause within 48 hours of his arrest rendered his revocation proceeding presumptively unconstitutional.

¶31    Johnston misplaces reliance on *County of Riverside*, however, as that case involved a criminal prosecution rather than a probation revocation proceeding.  Johnston fails to note that probationers already have been "tried and convicted" for the offense underlying their probation, and, thus, they are entitled to "less than the full panoply of due process rights accorded a defendant at a criminal trial."  *Carchman v. Nash*, 473 U.S. 716, 725-26, 105 S. Ct. 3401, 3406 (1985).

¶32    This Court previously has considered the question of whether due process requires a preliminary hearing for a probation revocation hearing.  *State v. Swan*, 220 Mont. 162, 713 P.2d 1003 (1986).  We noted in *Swan* that the Supreme Court has held in *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756 (1973), that due process entitles a defendant to a preliminary hearing on probable cause in addition to a final hearing.  *Swan*, 220 Mont. at 165, 713 P.2d at 1006.  We determined, however, that the reasons underlying the Supreme Court's holdings in *Morrissey* and *Gagnon* regarding preliminary hearings were absent under Montana's probation revocation scheme at § 46-23-1012 and § 46-23-1013, MCA (1983).  *Swan*, 220 Mont. at 166, 713 P.3d at 1006.

¶33    Unlike the procedures at issue in *Morrissey* and *Gagnon*, §§ 46-23-1012 and 46-23-1013, MCA (1983), provided the following due process protections:  (1) "[t]he revocation hearing is held promptly, before a defendant is returned to prison;" (2) "[t]he defendant receives notice of the hearing and of the alleged violations;" (3) and "the hearing is held

12

before a judge, rather than an administrative body, providing additional protection for the defendant." *Swan*, 220 Mont. at 166, 713 Mont. at 1006.

¶34 We deemed sufficient the 1983 version of § 46-23-1012, MCA, in *Swan* and concluded that the State did not need to provide a preliminary probable cause hearing in order to satisfy Swan's constitutional right to due process. *Swan*, 220 Mont. at 167, 713 P.2d at 1006-07. The Legislature amended § 46-23-1012, MCA, in 1999, however, to provide a probationer facing a possible revocation with a right to a probable cause hearing under limited circumstances. Laws of Montana, 1999, Ch. 505, § 3. We acknowledged the limited statutory requirement of a probable cause hearing in *State v. Goebel*, 2001 MT 73, ¶¶ 20-22, 305 Mont. 53, ¶¶ 20-22, 31 P.3d 335, ¶¶ 20-22. The Legislature amended § 46-23-1012, MCA, again in 2001 and eliminated the probable cause hearing requirement from the statute. Laws of Montana, 2001, Ch. 493, § 5. We noted the absence of a statutorily required preliminary probable cause hearing in *Goebel and Giddings*. *Goebel and Giddings*, ¶ 3. We did not revisit in these cases, however, the need for a probable cause hearing under the due process clauses of the Montana and United States constitutions.

¶35 The current version of § 46-23-1012, MCA, provides due process protections to a probationer similar to those contained in the 1983 probation revocation process that we deemed constitutionally adequate in *Swan*. The probation officer must file a "report of violation" within ten days of when the probationer is arrested pursuant to § 46-23-1012(2), MCA. Section 46-23-1012(4), MCA. The State must bring the probationer before a judge for a hearing on the charges "[w]ithout unnecessary delay," after a "report of violation" is

13

filed. Sections 46-23-1012(5), 46-18-203(4), MCA. The State must notify the probationer at the hearing of the alleged probation violations. Section 46-18-203(4)(a), MCA. Section 46-23-1012, MCA, provides adequate due process to an alleged probation violator. The District Court correctly dismissed Johnston's due process claims.

## ISSUE FOUR

¶36 *Did the District Court subject Johnston to double jeopardy when it revoked Johnston's suspended sentence for alleged probation violations for which he previously had been arrested?*

¶37 Johnston argues that he was "punished twice" for probation violations in violation of the Double Jeopardy Clause of the United States Constitution. Johnston points to the fact that he was held in jail in October 2001, for probation violations that the State used against him again in the December 20, 2001, revocation proceedings.

¶38 We recently have determined that a probation officer cannot pursue a revocation proceeding for a probation violation if the officer already has subjected the probationer to sanctions for that violation. *State v. Martinez*, 2008 MT 233, 344 Mont. 394, ___ P.3d ___. Martinez's probation officer initiated a revocation hearing by filing a report of violation that alleged that Martinez had committed multiple violations of his conditions of probation. *Martinez*, ¶ 11. Martinez sought to prohibit the District Court from considering those violations for which the probation officer already had subjected Martinez to intervention hearings under § 46-23-1012(3)(b), MCA. *Martinez*, ¶ 11. We confirmed in *Martinez* that a probation officer acting under § 46-23-1012(3), MCA, cannot pursue a revocation hearing

14

for conduct if the officer already has subjected the probationer to an intervention hearing for the same conduct. *Martinez*, ¶ 18.

¶39 Authorities arrested Johnston in October 2001. Johnston's probation officer, Officer Weaver, filed a "Warrant to Arrest and Hold" Johnston based upon Johnston's use of alcohol and his refusal to submit to an alcohol breath test in violation of his conditions of probation. Officer Weaver filed with the District Court a petition entitled "Suspected Violation of Probation" that asked the court to "set bond on [Johnston] pending further action by the Probation Department." The court set Johnston's bond at $5,000. Johnston posted bond and was released after spending five days in custody.

¶40 Authorities arrested Johnston again on November 30, 2001. Officer Weaver filed another "Warrant to Arrest and Hold" based upon Johnston's arrest for partner or family member assault and for obstructing a peace officer. Officer Weaver recommended, and the court agreed, to set Johnston's bond at $10,000 pursuant to a second petition of a "Suspected Violation of Probation."

¶41 Officer Weaver ultimately filed a "Report of Violation" and a "Petition to Revoke" as a result of the November 30, 2001, arrest. The petition to revoke alleged six violations as grounds for revocation of Johnston's probation. The District Court revoked Johnston's probation on the basis that Johnston had "admitted several of the violations . . . ." The record does not reveal the specific conduct that Johnston had admitted as violations of his conditions of probation.

¶42 The District Court could not revoke Johnston's sentence for conduct for which the court already had set bond pursuant to the two petitions of "Suspected Violation of Probation" without subjecting Johnston to double jeopardy under our decision in *Martinez*. *Martinez*, ¶ 18. Officer Weaver's petition to revoke included one alleged violation, however, that Officer Weaver did not include in either of the petitions of suspected violation for which the court had set bond: Johnston's conviction for driving with a suspended or revoked license. This conviction constituted a violation of a condition of Johnston's probation and provided the District Court with a sufficient basis for revoking his probation. *Martinez*, ¶ 20. Our holding in *Martinez* does not preclude the State from pursuing a revocation when a probationer receives an original sentence for conduct that also constituted a probation violation, but the probationer did not suffer a "probation" sanction as outlined in *Martinez*.

¶43 We have recognized that the Double Jeopardy Clause does not apply to a revocation of probation because a revocation proceeding does not constitute a "'criminal adjudication, does not require proof of a criminal offense, [and] does not impose punishment for any new offense . . . .'" *State v. Oppelt*, 184 Mont. 48, 53-54, 601 P.2d 394, 398 (1979) (quoting *State v. Eckley*, 579 P.2d 291, 293 (Or. App. 1978)). Oppelt faced the revocation of a suspended sentence that he had received in 1975 based upon conduct that had resulted in convictions in 1977. *Oppelt*, 184 Mont. at 49-50, 601 P.2d at 395-96. We noted in *Oppelt* that a revocation proceeding constitutes merely "an act in the performance of the duty of judicial supervision of probationary liberty . . ." and determined that the Double Jeopardy Clause did not apply. *Oppelt*, 184 Mont. at 53-54, 601 P.2d at 398 (citation omitted).

16

¶44 Johnston's conviction for driving with a suspended or revoked license did not result in an intervention hearing or in the court setting bond pursuant to § 46-23-1012(3), MCA. *Martinez*, ¶ 18. The fact that Johnston pled guilty to the offense does not implicate the Double Jeopardy Clause with regard to the State's petition for revocation. *Oppelt*, 184 Mont. at 53-54, 601 P.2d at 398. We conclude that the District Court did not subject Johnston to double jeopardy.

## ISSUE FIVE

¶45 *Was Johnston denied effective assistance of counsel in his revocation proceedings?*

¶46 Johnston claims that he was denied effective assistance of counsel. Johnston rests his ineffective assistance of counsel allegation wholly on the following assertion: "Here, it is apparent from the record and the proceedings that Johnston had substantial issues to raise before the Court. None of the issues were raised." We find no evidence in the record, or in Johnston's arguments on appeal, however, that the result of the December 20, 2001, revocation proceeding would have been different had the issues raised in this appeal been raised in the revocation proceeding. *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, ¶ 11, 97 P.3d 1095, ¶ 11. We conclude that the District Court properly dismissed Johnston's Motion to Set Aside Revocation and Petition for Post-conviction Relief.

¶47 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER

17

/S/ PATRICIA COTTER

Justice James C. Nelson, concurring.

¶48    I concur in Issues One, Two, Four and Five. I also concur in the result of Issue Three, but I do so on a narrower basis than does the Court's Opinion.

¶49    We begin ¶ 30 with the statement of Johnston's claim—specifically, that the State violated his constitutional right to due process by holding him in custody for 21 days with no preliminary hearing to establish probable cause for his alleged probation violations. We then proceed in the subsequent paragraphs to explain that § 46-23-1012, MCA, provides probationers with due process protections. However, the Court's Opinion does not explain why the 21-day delay in Johnston's case does not constitute "unnecessary delay" under § 46-18-203(4), MCA, or a due process violation.

¶50    It appears to me that the Court is treating Johnston's due process claim as a *facial* challenge to §§ 46-23-1012(5) and 46-18-203(4), MCA, and is then reaffirming our holding in *State v. Swan*, 220 Mont. 162, 713 P.2d 1003 (1986), Opinion, ¶¶ 32-35, when in reality, Johnston's claim is an *as-applied* challenge. I would explain that § 46-23-1012, MCA, provides adequate due process protections, as the Opinion states in ¶ 35, and *also* that the 21-day delay challenged by Johnston does not fall outside the "[w]ithout unnecessary delay" requirement of § 46-18-203(4), MCA, on the facts of this case. This approach recognizes

18

that there may be a fact scenario wherein this amount or nature of delay would be "unnecessary," § 46-18-203(4), MCA, or would violate due process.

¶51    On that basis I concur with Issue Three.

/S/ JAMES C. NELSON

Justice Jim Rice, dissenting.

¶52    I dissent from the Court's resolution of Issue One and would not reach Issues Two-Five.

¶53    The Court states that the State argues for the first time on appeal that Johnston's claim is barred by § 46-21-105(2), MCA, and reasons that the State has therefore "waived" this procedural bar. Opinion, ¶ 21. The record reflects that, in its written response to Johnson's petition for post-conviction relief, the State argued that "[a]ny claims which could have been raised on direct appeal may not be raised in a petition for post-conviction relief," citing § 46-21-105(2), MCA, but thereafter focused its argument on the time bar and the substantive merits of Johnston's claims.

¶54    For the reasons set forth in my dissent in *Davis v. State*, 2008 MT 226, 344 Mont. 300, 187 P.3d 654, regarding the similar issue of the time bar set forth in § 46-21-102, MCA, I disagree with the Court's analysis with regard to the holdings of our previous cases and the effect of the post-conviction statutes. I do not belief that the procedural bar at issue here was

waived or forfeited by the State, and would conclude that Johnston's claims were barred by that provision.

/S/ JIM RICE

Chief Justice Karla M. Gray joins in the foregoing dissenting Opinion of Justice Jim Rice.

/S/ KARLA M. GRAY