JUSTICE RICE
delivered the Opinion of the Court.
¶1 A jury in the Eighteen Judicial District Court, Gallatin County, convicted Charitie L. Shively (Shively) of theft for knowingly exercising unauthorized control of a welder to deprive the owner of its use, a felony. The District Court deferred imposition of her sentence for three years, subject to various conditions. Shively appeals, raising the following issues:
¶2 1. Must Defendant’s conviction be reversed because there was no evidence that she knew the welder had been stolen?
¶3 2. Did the District Court err by failing to instruct the jury that Defendant could not be convicted absent proof beyond a reasonable doubt that she knew the welder was stolen?
¶4 3. Did prosecutorial tactics render Defendant’s trial unfair?
FACTUAL AND PROCEDURAL BACKGROUND
¶5 In the summer of 2005, a welder was stolen from Sletten Construction Company (Sletten). On August 25, Shively pawned the welder for $800 at Debos Pawn Shop in Bozeman, telling David Curry, an employee of the pawnshop, that the $800 was needed to bail her boyfriend out of jail. Later, Shively and her boyfriend returned to the pawnshop and borrowed another $812 against the welder. A Sletten employee noticed the welder in the pawnshop, and informed the equipment manager at Sletten that a Sletten-owned welder was there. The equipment manager then matched the equipment number of the welder at the pawnshop with that of the stolen welder.
¶6 Shively was charged by information with one count of felony theft under § 45-6-301(1), MCA, specifically, with having “purposely or knowingly obtained or exerted unauthorized control” over Sletten’s welder “with the purpose of depriving Sletten Construction of the property.”
¶7 At trial, the State called Sletten’s equipment manager and Curry as witnesses, who testified to the facts detailed above. Curry also indicated that Shively gave no indication that she knew the welder had been stolen. At the conclusion of the State’s case-in-chief, Shively *515 moved the court for a directed verdict.[1] The court ruled that the State had presented sufficient evidence to support a conviction, and therefore denied Shively’s motion. Shively offered no evidence and rested. During closing argument, the prosecutor argued there was no requirement within the jury instructions “bhat the State has to prove that the Defendant knew this property was stolen.” The jury returned a guilty verdict. Shively appeals.
STANDARD OF REVIEW
¶8 ‘The denial of a motion to dismiss in a criminal case is a question of law and we review a district court’s conclusions of law to determine whether those conclusions are correct.” McWilliams, ¶ 22.
¶9 We review a court’s jury instructions for abuse of discretion. State v. Field, 2005 MT 181, ¶ 16, 328 Mont. 26, 116 P.3d 813. A district court has broad discretion in instructing the jury and the instructions must “as a whole, fully and fairly instruct the jury on the applicable law.” Field, ¶ 16 (quotation omitted).
DISCUSSION
¶10 1. Must Defendant’s conviction be reversed because there was no evidence that she knew the welder had been stolen?
¶ 11 Shively argues in her opening brief that her ‘theft conviction must be reversed ... because, as the prosecutor correctly admitted, there was no evidence that [she] knew that the welder she pawned had been stolen.” Her argument is not a challenge to the sufficiency of the evidence generally, or even to the evidence of mental state generally, but, rather, is a narrow argument directed to a very specific point: the absence of evidence that Shively knew the welder had been stolen. As she opines, “[i]t’s not illegal in Montana to pawn a stolen object if you don’t know it’s stolen.” She follows this argument by asking that the State be estopped from asserting that any evidence was presented on this point, or that the jury was properly instructed that proof of this knowledge was required for conviction, given the prosecutor’s comments to the contrary during the trial. She offers that her appeal ‘is the State’s opportunity to disavow itself of this conviction” and that it “should concede that [her] conviction must be reversed.”
¶12 The State has not taken Shively up on the offer. Responding to *516 Shiveljf s opening brief, the State does not seek to excuse either the prosecutor’s comments or the jury instructions. Rather, the State argues that “a plain reading of §45-6-301(l)(a) shows that the State was never obligated to prove Shively actually knew the welder was stolen. Her issue fails ab initio.” Characterizing Shively’s appeal, the State argues that ‘Shively stakes so much” on “a matter of law.”
¶13 Given the particular posture of the issues and arguments, and our resolution of this appeal by an interpretation of the theft statute, we have not cited the standard of review for challenges to the sufficiency of the evidence, under which we review the evidence in a light most favorable to the prosecution and determine whether a rationale trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt. See State v. Meckler, 2008 MT 277, ¶ 9, 345 Mont. 302, 190 P.3d 1104. The issue raised by Shively does not ultimately require us to review evidence, and therefore we review the legal issue raised here, a matter of statutory interpretation, de novo for correctness. McWilliams, ¶ 22; State v. Triplett, 2008 MT 360, ¶ 13, 346 Mont. 383, 195 P.3d 819 (“the interpretation and construction of a statute is a matter of law and we review whether the district court interpreted and applied a statute correctly de novo.”).[2]
¶14 The provision of the theft statute under which Shively was charged states:
(1) A person commits the offense of theft when the person purposely or knowingly obtains or exerts -unauthorized control over property of the owner and:
(a)has the purpose of depriving the owner of the property ...
Section 45-6-301(1), MCA. Subsection (3) of that statute provides:
(3) A person commits the offense of theft when the person purposely or knowingly obtains control over stolen property knowing the property to have been stolen by another and:
(a) has the purpose of depriving the owner of the property;
(b) purposely or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
(c) uses, conceals or abandons the property knowing that the use, concealment or abandonment probably will deprive the owner *517 of the property.
Section 45-6-301(3), MCA (emphasis added). Further definitions forming a part of these provisions are as follows:
(35) “Knowingly”-a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person’s own conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person’s conduct. When knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence. Equivalent terms, such as “knowing” or “with knowledge”, have the same meaning.
(46) ‘Obtains or exerts control” includes but is not limited to the taking, the carrying away, or the sale, conveyance, or transfer of title to, interest in, or possession of property.
(65) “Purposely”-a person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is the person’s conscious object to engage in that conduct or to cause that result. When a particular purpose is an element of an offense, the element is established although the purpose is conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offense.
Section 45-2-101, MCA.
¶15 Shively first argues that the plain language of subsection (1) of § 45-6-301, MCA, unambiguously requires proof that she knew the welder was stolen. The State answers that it unambiguously does not. Shively, noting the requirement under subsection (3) that a person must know the property was stolen, alternatively argues that “subsection (3) makes clear that proof of knowledge that the item was stolen is necessary for a theft conviction. The specific language of subsection (3) controls any ambiguity that lies in subsection (1).” She also argues that subsection (3), being the more specific of the two provisions, controls over the more general terms of subsection (1).
¶16 The State argues that the plain language of subsection (1) merely requires that a person “obtains or exerts unauthorized control” over property of the owner with the purpose to deprive the owner. The State argues that a person can obtain unauthorized control over property without it first being stolen, such as in State v. Long, 227 Mont. 199, 738 P.2d 487 (1987). In Long, we affirmed the defendant’s conviction for theft of a boat where he initially exercised lawful control with the *518 owner’s permission, but later exceeded the permission governing its use. Long, 227 Mont. at 204, 738 P.2d at 490-91; see also State v. White, 230 Mont. 356, 750 P.2d 440 (1988) (defendant convicted of theft for failing to return the owner’s truck after the owner withdrew permission for the defendant to use it).
¶17 The Commission Comments, which we recently cited in State v. Meeks, 2008 MT 40, ¶ 9, 341 Mont. 341, 176 P.3d 1073, while addressing the elements of theft under this statute, speak to this interpretational issue:
While the method by which unauthorized control is obtained or exerted is immaterial in subsection (1), and probably, in conjunction with one of the subdivisions (a), (b), or (c), would cover all forms of theft the commission felt that such an approach might be too concise, and might create problems of application, in view of the large body of statutory material and the large number of offenses it is intended to replace. Therefore, subsections (2) and (3) were added, to cover the specific offenses of theft by threat or deceit and receipt of stolen property, although the commission intends that all forms of theft could be charged and proved under subsection (1).
Section 45-6-301 (Commission Comments) (emphasis added). The Comments explain that while the statute defines several specific theft offenses, including the knowing receipt of stolen property under subsection (3), nonetheless, subsection (1) is a general provision under which “all forms of theft” can be charged. Further, the Comments explain that “the method by which unauthorized control” is exerted under subsection (1) ‘is immaterial.’’Thus, there is not a requirement under subsection (1) that a person act without authorization only by receiving stolen property or with knowledge that the property was stolen-although that would be one method of doing so. The statute under which Shively was charged requires that the State prove (1) the defendant purposely or knowingly exerted unauthorized control over the property of another, and (2) the defendant had the purpose of depriving the owner of the property. An Annotator’s Note to the statute offers this explanation:
Because subsection (1) makes no distinction concerning the way in which the property was obtained, the subsection should cover all conceivable forms of theft including receiving stolen property. Because only two elements must be proved under this subsection, a knowing exertion of control and a purpose to deprive, the provision represents a considerable simplification from the traditional approach.
*519 Section 45-6-301 (Annotator’s Note) (emphasis added).
¶18 We thus conclude that the State was not required to prove that Shively knew the welder was stolen pursuant to the charge under subsection (1). Although it is not incumbent in this case that we look to the State of Illinois, the source of our statutory provision, in order to reach our conclusion, we simply note that Illinois courts have held that it is permissible to charge and convict a defendant under the general theft provisions even though the evidence would support a conviction under the more specific statute. See Ill. v. Sherman, 441 N.E.2d 896 (1982); Ill. v. McCormick, 235 N.E.2d 832 (1968).
¶19 2. Did the District Court err by failing to instruct the jury that Defendant could not be convicted absent proof beyond a reasonable doubt that she knew the welder was stolen?
¶20 Shively’s second issue mirrors her first. She argues that the District Court erred ‘by refusing to instruct the jury that [she] could not be found guilty of theft absent proof beyond a reasonable doubt that she knew the welder was stolen.” The State responds that ‘Shively simply proposed a mental state that was not an element of the offense that the jury could properly consider.” Given our resolution of the first issue, we must agree with the State. While Shively was free to argue that the mental states required by the elements of the crime were not proven, knowledge that the welder was stolen was not an element under the crime as charged. Thus, the court did not err in refusing to instruct the jury that Shively could not be found guilty of theft absent proof that she knew the welder was stolen.[3]
¶21 3, Did prosecutorial tactics render Defendant’s trial unfair?
¶22 Shively asks the Court to invoke the common law plain error doctrine to review the prosecutor’s “numerous improper tactics” to which she did not object at trial. Shively argues the prosecutor’s decision to charge her, proposed jury instruction of “knowingly,” voir dire tactics, opening statement, and closing argument compromised her right to a fair trial.
¶23 We do not generally address issues not raised at trial. An exception to this general rule is the common law plain error doctrine. We adopted this limited exception to permit a review of “claimed errors that implicate a criminal defendant’s fundamental constitutional *520 rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.” State v. Finley, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996) (overruled on other grounds State v. Gallagher, 2001 MT 39, ¶ 12, 304 Mont. 215, 19 P.3d 817). However, we use this power sparingly, on a case-by-case basis, and will not invoke the doctrine if the alleged error did not result in manifest injustice or compromise the integrity of the judicial process. See State v. Raugust, 2000 MT 146, 300 Mont. 54, 3 P.3d 115; State v. Rogers, 257 Mont. 413, 849 P.2d 1028 (1993); State v. Arlington, 265 Mont. 127, 875 P.2d 307 (1994).
¶24 Having reviewed the facts and circumstances herein, we conclude that this case is not appropriate for the exercise of plain error review. Much of the conduct to which Shively now objects arises from her mistaken belief that the prosecution was required to prove she knew the welder was stolen, and acted contrary to that requirement. Therefore, we decline to address Shively’s claim related to the prosecutor’s actions.
¶25 Affirmed.
CHIEF JUSTICE McGRATH, JUSTICES WARNER and MORRIS concur.

 We have since explained that “there is no statutory authority for referring to a motion to dismiss for insufficient evidence as a ‘motion for directed verdict.’” State v. McWilliams, 2008 MT 59, ¶ 36, 341 Mont. 517, 178 P.3d 121, 65 U.C.C. Rep. Serv. 2d 143.

 Shively substantially expands the scope other arguments and legal theories in her reply brief, where she also challenges the sufficiency of the evidence that she “knew she was exercising control over another’s property and that [she] knew that this control was not authorized by the owner.” However, these are new arguments not raised in her opening brief, which we will not address. See M. R. App. P. 12(3); In re Estate of Bovey, 2006 MT 46, ¶ 11, 331 Mont. 254, 132 P.3d 510.

 As with the first issue, Shively broadens her argument and theories in her reply brief by challenging the other mental states required under the charge, but we do not address those additional arguments.