JUSTICE NELSON,
dissenting.
¶25 Respectfully, I dissent from the Court’s decision.
¶26 First, I disagree with the Court’s standard of review. Opinion, ¶ 13. In the context of motions for a new trial, this Court has explained that our standard of review depends on the basis of the motion. See Giambra v. Kelsey, 2007 MT 158, ¶¶ 24-27, 338 Mont. 19, 162 P.3d 134 (clarifying that our standard of review of a trial court’s ruling on a motion for a new trial based on insufficiency of the evidence is de novo, not manifest abuse of discretion, given that the trial court’s conclusion as to whether sufficient evidence exists to convict is ultimately an analysis and application of the law to the facts, not a matter of discretion). The same principle necessarily applies to motions for a mistrial: the standard of review depends on the basis of the motion and, in particular, the process the district court applies in resolving that motion. Indeed, the standard of review in any given case depends on the particular posture of the issues and arguments, not just on how a party’s motion happens to be captioned or denominated. For example, in State v. Shively, 2009 MT 252, 351 Mont. 513, 216 P.3d 732, the Court explained:
Given the particular posture of the issues and arguments, and our resolution of this appeal by an interpretation of the theft statute, we have not cited the standard of review for challenges to the sufficiency of the evidence, under which we review the evidence in a light most favorable to the prosecution and determine whether a rationale [sic] trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt. The *119 issue raised by Shively does not ultimately require us to review evidence, and therefore we review the legal issue raised here, a matter of statutory interpretation, de novo for correctness.
Shively, ¶ 13 (emphases added; citation omitted).
¶27 The dispositive issue in the present case is, likewise, one of statutory interpretation. It is axiomatic that a trial court does not exercise discretion when interpreting a statute. Either the court’s interpretation is correct, or it isn’t. No discretion is involved. Accordingly, our review here is de novo. Shively, ¶ 13; see also State v. Triplett, 2008 MT 360, ¶ 13, 346 Mont. 383, 195 P.3d 819 (“[T]he interpretation and construction of a statute is a matter of law and we review whether the district court interpreted and applied a statute correctly de novo.”); Funke v. Estate of Shultz, 2009 MT 411, ¶ 6, 353 Mont. 492, 223 P.3d 839 (“Our standard of review of the interpretation and application of a statute to particular circumstances is whether the district court was correct as a matter of law.”); State v. Brown, 2009 MT 452, ¶ 6, 354 Mont. 329, 223 P.3d 874 (“The interpretation and construction of a statute is a matter of law which we review de novo to determine whether the district court’s interpretation and construction of the statute is correct.”).
¶28 The Court cites State v. White, 2008 MT 129, ¶ 8, 343 Mont. 66, 184 P.3d 1008, and State v. McCarthy, 2004 MT 312, ¶ 41, 324 Mont. 1, 101 P.3d 288, in support of the abuse of discretion standard of review. Opinion, ¶¶ 13,19. First of all, this standard may be traced to State v. Partin, 287 Mont. 12, 15-18, 951 P.2d 1002, 1004-05 (1997), where we straightened out the standard of review with respect to motions for a mistrial based on erroneously admitted evidence. We explained that the “denial of a fair and impartial trial” standard applies when a trial court determines whether to grant a mistrial moved for or consented to by the defendant and that we review the trial court’s ruling under this standard for an abuse of discretion. These standards make sense when the question is whether erroneously admitted evidence or some other misstep during the course of trial is at issue.
¶29 But here, we are dealing with an alleged defect in the trial mechanism itself (specifically, with the composition of the jury), and it is well-settled that such defects are not subject to a subjective analysis of whether the defendant was denied a fair and impartial trial. See State v. Van Kirk, 2001 MT 184, ¶ 39, 306 Mont. 215, 32 P.3d 735 (“Examples of structural error include errors in the jury selection process....”); State v. LaMere, 2000 MT 45, ¶¶ 26, 39-50, 298 Mont. 358, *120 2 P.3d 204 (errors in the jury-selection process are structural in nature and, therefore, cannot be assessed for prejudicial impact relative to the other evidence introduced at trial). The District Court’s analysis, in turn, involved the interpretation and construction of statutory language; and nothing in the cited paragraphs of White and McCarthy stands for the proposition that we resolve interpretational questions involving admittedly ambiguous statutes utilizing the abuse of discretion standard. Indeed, that is contrary to our law and precedent cited above.
¶30 Similarly, nothing in ¶ 41 of McCarthy stands for the unique proposition that when a statute is ambiguous, a defendant “carries a heavy burden to demonstrate that the District Court abused its discretion.” Opinion, ¶ 19. Where, as here, a statute is subject to more than one reasonable but conflicting interpretation, it is ambiguous and we resort to legislative history and intent to resolve the ambiguity. As we stated in State v. Johnston, 2008 MT 318, 346 Mont. 93, 193 P.3d 925:
Our purpose in construing a statute is to ascertain the legislative intent and give effect to the legislative will. We interpret a statute by looking first to the statute’s plain language, and if the language is clear and unambiguous no further interpretation is required. We resolve ambiguous terms, however, by looking to the structure, purpose and/or legislative history of a statute to determine the intent of the Legislature.
Johnston, ¶ 26 (emphasis added; citations omitted).
¶31 Applying our precedents, then, we should review the District Court’s statutory interpretation de novo. And, given that the statute at issue is ambiguous, we should look to the structure, purpose, and legislative history of the statute to determine the Legislature’s intent. There is simply no basis for using an abuse of discretion standard. ¶32 Second, in addition to the Court’s standard of review, I disagree with the Court’s statutory construction. It is indisputable that the Legislature’s intent in amending §§ 3-15-402 to -404 and 61-5-127, MCA, was to increase the jury pool so as to include not only registered voters but also licensed drivers. The Legislature clearly intended to broaden the cross section of the community available for jury duty and actually serving on juries. Additionally, the legislative history discloses that the purpose of moving up the timing of the jury list/term was so that the jury-selection process could begin a month earlier and jury terms could run concurrently with the county’s fiscal year. See Mont. H. Jud. Comm., Revise Jury Pool Laws: Hearing onHB 341,60th Leg., *121 Reg. Sess., Ex. 17 at 3 (Jan. 24, 2007).
¶33 With that stated legislative intent and history, it makes little sense that each clerk of district court should be able to establish her or his own rules vis-a-vis when to use the combined jury list sent out by the Secretary of State. Yet, under the Court’s holding today-namely, that “ensuing year” encompasses both the following calendar year and beginning in June, Opinion, ¶ 20-we have effectively abdicated our duty to interpret the statute and allowed each clerk of district court to choose what that phrase will mean for her or his particular county. Thus, it could mean “the following calendar year,” as the District Court surmised, “beginning in June,” as Norquay argues, “beginning in November,” to correspond with Cascade County’s jury-selection process, “beginning in March,” to correspond with the County’s jury term, or some other date. See Opinion, ¶¶ 6, 20. And, given this holding, it makes little sense for me to offer an interpretation of “ensuing year,” as I am not a clerk of district court and, thus, my opinion is not only irrelevant, but also no better than any one of the 22 district court clerks’ opinions.
¶34 While it is unfortunate that personnel from the Supreme Court Administrator’s Office offered what amounts to legal advice to the Cascade County Clerk of District Court on how to interpret the statutory amendments at issue, see Opinion, ¶¶ 6-7, that does not excuse the Clerk of District Court from relying on that advice. Giving advice about how to interpret ambiguous statutes for county elected officials is not the job of Supreme Court Administrator’s Office staff. A clerk of district court well knows that if she or he is confused about how to interpret a statute, she or he should seek legal advice from the county’s legal adviser, the county attorney. See § 7-4-2711(2)(a), MCA (“The county attorney shall... give, when required and without fee, an opinion in writing to the county, district, and township officers on matters relating to the duties of their respective offices ,...”).[1] Indeed, the record here reflects that the Cascade County Attorney was under the impression that the Cascade County Clerk of District Court had drawn Norquay’s jury venire from the combined voterflicensed-driver list, as the law requires, and that the Clerk of District Court should *122 have known better for not drawing the jury from the combined list.[2]
¶35 A criminal defendant in Cascade County is entitled to the same benefit of the law as a criminal defendant in Toole County or Yellowstone County or Missoula County. Each clerk of district court is not a law unto herself or himself. Each does not have authority to interpret the law according to her or his own convenience and provincial practice. The availability and application of the law is not subject to some sort of “luck of the draw” rule as to the judicial district in which the crime was committed.
¶36 It is well-established that errors in the jury-selection process are structural errors, which are not amenable to no-harm, no-foul analysis. VanKirk, ¶¶ 38-39;LaMere, ¶¶ 26, 39-50. Structural errors are defects in the framework within which a trial proceeds. As such, they undermine the fairness of the entire trial proceeding and are presumptively prejudicial. Thus, errors in the jury-selection process require a new trial. See Van Kirk, ¶¶ 38-39; LaMere, ¶¶ 26, 48; see also State v. Lamere, 2005 MT 118, ¶ 25, 327 Mont. 115, 112 P.3d 1005.
¶37 Obviously, the Legislature had one meaning in mind when it used the phrase “ensuing year” in § 3-15-404(6), MCA. Since the Legislature did not have the foresight to define that phrase, it is our job to articulate what its meaning is and to require the clerks of the district courts of Montana to apply that meaning uniformly.
¶38 Because of the parochial practice of the Cascade County Clerk of District Court, Norquay did not get the benefit of being tried by the broad cross section of the community that the Legislature mandated. This error is structural, and Norquay is entitled to a new trial.[3]
¶39 I would reverse and remand for a new trial. I dissent from our failure to do so.

 And, if the county attorney is unable to answer the inquiry, an opinion may be requested from the Attorney General. See § 2-15-501(7), MCA.

 This is not the first case to come before this Court involving errors of the Cascade County Clerk of District Court’s office caused by its drawing juries according to its convenience and its own extra-legal procedures. See State v. Robbins, 1998 MT 297, 292 Mont. 23, 971 P.2d 359; State v. LaMere, 2000 MT 45, 298 Mont. 358, 2 P.3d 204; Robbins v. State, 2002 MT 116, 310 Mont. 10, 50 P.3d 134.

 To the extent it could be argued that this conclusion (which I believe is the only one permitted under our precedents) might result in a flood of appeals by other defendants, that consideration is obviously secondary not only to this Court’s duty to follow and uphold the law, but also, and more importantly, to every criminal defendant’s fundamental constitutional right to trial by a fair and impartial jury properly selected according to statutory procedures. See LaMere, 2000 MT 45, ¶ 19.